# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JULIE MASON, on behalf of herself and all others similarly situated, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :   CASE NO.  3:18-cv-01280-KAD <br> : |
| YALE UNIVERSITY, | : <br> :   January 15, 2019 |
| Defendant. | : <br> : |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT[1]

---

[1] Defendant Yale University does not request oral argument and believes this motion can be decided based on the pleadings, but is willing to participate in oral argument if it would be of assistance to the Court.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ................................................................................................................1

SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ........................................2

      A.     Yale Notifies Individuals About An Intrusion Of A Yale Database And
           Offers Identity Monitoring Services To Potentially Affected Individuals .............2

      B.     Plaintiff's Claims .....................................................................................................3

ARGUMENT .........................................................................................................................4

I.     Plaintiff Lacks Article III Standing ...........................................................................5

      A.     Plaintiff Has Not Pled Sufficient Factual Allegations To Establish A
           Cognizable Injury-In-Fact .......................................................................................6

      B.     Plaintiff Has Not Plausibly Alleged Any Injury Fairly Traceable To Yale's
           Conduct ....................................................................................................................10

II.    Plaintiffs' Negligence Claim Fails As A Matter Of Law .................................12

      A.     Plaintiff's Negligence Claim Is Barred By The Statute Of Limitations. ...............12

      B.     Plaintiff Has Not Alleged A Legal Duty Yale Owed To Her ...............................13

      C.     Plaintiff Fails to Plead Proximate Causation .........................................................16

      D.     Plaintiff Fails To Allege Actual Injury ..................................................................18

III.   Plaintiff's Claims Under The Connecticut And New York Data Breach Statutes Fail As A
     Matter Of Law Because There Is No Private Right of Action Under Those Statutes .......19

      A.     There is No Private Right of Action Under C.G.S.A. § 36a-701b ......................19

      B.     There is No Private Right of Action Under N.Y. Gen. Bus. Law § 899-aa...........20

IV.   Count IV Should Be Dismissed Because Plaintiff Fails To State A Claim Under N.Y.
     Gen. Bus. Law § 349 ...............................................................................................21

      A.     Plaintiff's Section 349 Claim Is Barred By The Three-Year Statute Of
           Limitations ..............................................................................................................21

B.   Section 349 Does Not Apply Because Plaintiff Alleges No Deceptive Transaction That Occurred In New York ............................................................. 22

C.   Plaintiff's Section 349 Claim Also Fails To Plead Essential Elements of the Claim .................................................................................................... 24

CONCLUSION .......................................................................................................... 27

CERTIFICATE OF SERVICE .................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
  19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) ............................................................21, 25

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders
  Ass'n, Inc.*,
  No. 10 Civ. 3314, 2018 WL 2084168 (S.D.N.Y. May 1, 2018)................................23

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ..................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................4, 5, 25

*Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank
  AG*,
  234 F. Supp. 3d 526 (S.D.N.Y. 2017).....................................................................26

*In re Barnes & Noble Pin Pad Litig.*,
  No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013)..................................8

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017), *cert. denied*, 137 S. Ct. 2307 (2017).........................9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................4, 5

*Booth v. Hartford Life & Accident Ins. Co. of Am.*,
  No. 3:08-cv-0013 (JCH), 2009 WL 652198 (D. Conn. Feb. 3, 2009).................2, 16

*Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.*,
  327 Conn. 540, 567-68, 175 A.3d 1, 17 (2018).....................................................15

*Certain Underwriters at Lloyd's, London v. Cooperman*,
  289 Conn. 383, 957 A.2d 836 (2008) ...................................................................12

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...............................................................................6, 9, 18

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777, 967 N.E.2d 1177 (2012)...............................................................22

*Doe v. Quest Diagnostics, Inc.*,
  No. 15-cv-8992 (LGS), 2017 WL 1102663 (S.D.N.Y. March 23, 2017)................11

*Dyer v. Nw. Airlines Corps.*,
    334 F. Supp. 2d 1196 (D.N.D. 2004) ........................................................................16

*Soares ex rel. Estate of Soares v. George A. Tomasso Constr. Corp.*,
    66 Conn. App. 466, 784 A.2d 1041 (2001) .............................................................14

*Fero v. Excellus Health Plain, Inc.*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017) ..............................................9, 10, 19, 21

*Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*,
    194 F.3d 1227 (11th Cir. 1999) ...............................................................................10

*Freeman v. United States*,
    166 F. Supp. 3d 215 (D. Conn. 2016) .......................................................................5

*Gale v. IBM*,
    781 N.Y.S.2d 45 (N.Y. App. Div. 2004) ................................................................27

*In re Gen. Motors LLC Ignition Switch Litig.*,
    339 F. Supp. 3d 262 (S.D.N.Y. 2018) ......................................................................8

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314, 774 N.E.2d 1190 (N.Y. 2002) .......................................22, 23, 26

*Gould v. Helen of Troy Ltd.*,
    No. 16 Civ. 2033 (GBD), 2017 WL 1319810 (S.D.N.Y. Mar. 30, 2017) .............22

*Graham v. Eagle Distrib. Co.*,
    224 A.D.2d 921, 637 N.Y.S.2d 583 (N.Y. App. Div. 1996) ...................................26

*Graham v. Select Portfolio Servicing, Inc.*,
    156 F. Supp. 3d 491 (S.D.N.Y. 2016) ......................................................................22

*Grenier v. Commissioner of Transportation*,
    306 Conn. 523, 51 A.3d 367 (2012) ........................................................................15

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08-cv-6060 (RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .................9, 11

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    4 A.3d 492, 2010 ME 93 (Me. 2010) .................................................................8, 9

*Holten v. Standard Parking Corp.*,
    98 F. Supp. 3d 444 (D. Conn. 2015) ......................................................................12

*JD & K Assocs., LLC v. Selective Ins. Grp., Inc.*,
    143 A.D.3d 1232, 38 N.Y.S.3d 658 (N.Y. App. Div. 2016) ..................................27

*Kaufman v. Sirius XM Radio, Inc.*,
    474 F. App'x 5 (2d Cir. 2012) ........................................................................23

*Kaufman v. Sirius XM Radio, Inc.*,
    751 F. Supp. 2d 681 (S.D.N.Y. 2010), *aff'd,* 474 F. App'x 5 (2d Cir. 2012).........................24

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*,
    773 F.3d 243 (11th Cir. 2014) ...........................................................................8

*Lawrence v. O & G Indus., Inc.*,
    319 Conn. 641, 126 A.3d 569 (2015) ..........................................................12, 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................6, 10

*Martino v. LeRose*,
    No. CV075002004S, 2007 WL 4686480 (Conn. Super. Ct. Nov. 30, 2007) .........................17

*McLoughlin v. People's United Bank, Inc.*,
    No. 3:08-cv-00944 (VLB), 2009 WL 2843269 (D. Conn. Aug. 31, 2009) ...........................18

*Medcalf v. Washington Heights Condo. Ass'n, Inc.*,
    57 Conn. App. 12, 747 A.2d 532 (2000) ......................................................16, 17

*Metro. Enter. Corp. v. United Technologies Int'l, Corp., Pratt & Whitney Large
    Commercial Engines Div.*,
    No. 3:03cv1685 (JBA), 2004 WL 1497545 (D. Conn. June 28, 2004) ...............................20

*Morrissey v. Nextel Partners, Inc.*,
    895 N.Y.S.2d 580 (N.Y. App. Div. 2010) ...........................................................23

*PJM & Assocs., LC v. City of Bridgeport*,
    292 Conn. 125, 971 A.2d 24 (2009) .................................................................20

*Provost v. Aptos, Inc.*,
    No. 1:17-cv-02120-ELR, 2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ...............................8

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)...........................................................................9

*Right v. Breen*,
    277 Conn. 364, 890 A.2d 1287 (2006) ...............................................................18

*RK Constructors, Inc. v. Fusco Corp.*,
    231 Conn. 381, 650 A.2d 153 (1994) ...........................................................14, 17

*Schwartz v. HSBC Bank USA, N.A.*,
    Nos. 17-2212-cv, 17-2309-cv, 2018 WL 4360896 (2d Cir. Sept. 13, 2018) ........................4, 5

*Sheth v. N.Y. Life Ins. Co.*,
  709 N.Y.S.2d 74 (N.Y. App. Div. 2000) ............................................................26

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................5, 6, 10

*Stutman v. Chem. Bank*,
  95 N.Y.2d 24, 731 N.E.2d 608 (N.Y. 2000) ....................................................25

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ..............................................................19

*Taylor v. Fed. Aviation Admin.*,
  No. 18-cv-00035 (APM), 2018 WL 6172498 (D.D.C. Nov. 26, 2018) ...................8

*Teller v. Bill Hayes, Ltd.*,
  630 N.Y.S.2d 769 (N.Y. App. Div. 1995) .........................................................26

*Torres v. Wendy's Co.*,
  195 F. Supp. 3d 1278 (M.D. Fla. 2016) ..............................................................7

*Torres v. Wendy's Int'l, LLC*,
  No. 6:16-cv-210-Orl-40DCI, 2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) ........21

*In re Trilegiant Corp., Inc.*,
  11 F. Supp. 3d 82 (D. Conn. 2014), *aff'd sub nom.*, *Williams v. Affinion
  Group, LLC*, 889 F.3d 116 (2d Cir. 2018) .......................................................20

*Valentine v. LaBow*,
  95 Conn. App. 436, 897 A.2d 624 (2006) ........................................................12

*Waters v. Autuori*,
  236 Conn. 820, 676 A.2d 357 (1996) ..............................................................15

*Welborn v. IRS*,
  218 F. Supp. 3d 64 (D.D.C. 2016) .............................................................10, 19

*Whalen v. Michael Stores Inc.*,
  153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017)............... *passim*

*Wilson v. Dantas*,
  746 F.3d 530 (2d Cir. 2014).............................................................................26

*Winn v. Posades*,
  91 Conn. App. 610, 881 A.2d 524 (2005), *aff'd*, 281 Conn. 50, 913 A.2d 407
  (2007) ............................................................................................................17

*In re Zappos.com, Inc.*,
   108 F. Supp. 3d 949 (D. Nev. 2015) ..............................................................................10, 19

## Constitution and Statutes

U.S. Constitution Article III ................................................................................ *passim*

C.G.S.A. § 36a-701b ........................................................................................ passim

Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110 *et seq.* ..................................4, 19, 20

C.G.S.A. § 52-577 ........................................................................................12, 13

N.Y. C.P.L.R. § 214(2) ........................................................................................22

N.Y. Gen. Bus. Law §§ 349 *et seq* ................................................................................ *passim*

N.Y. Gen. Bus. Law § 899-aa ........................................................................................4, 20, 21

## Other Authorities

Federal Rules of Civil Procedure Rule 8 ......................................................................25

Federal Rule of Civil Procedure 12 ................................................................................4, 5, 16

Restatement (Second) of Torts Section 323 ................................................................................15

## INTRODUCTION

For Defendant Yale University ("Yale"), protecting the sensitive information of students, employees, and other individuals who interact with Yale is of utmost importance. Approximately 10 years ago, unauthorized persons improperly gained access to some personal information—including names, Social Security numbers, and certain other information—of approximately 119,000 individuals that had been stored on a Yale database at that time. Yale discovered this unauthorized access during a security review in June 2018. Although the data was no longer stored in the database, Yale immediately took steps to identify the individuals whose information had been affected, notify them of the incident, and offer them identity monitoring services free of charge.

Yale notified Plaintiff on July 30, 2018 that her information had been affected in the incident and offered her identity theft monitoring services free of charge. Two days later she filed this lawsuit against Yale. In her Amended Complaint, Plaintiff says that she provided her personal information to Yale in 1996 when she applied for a visiting student program. However, despite the fact that she allegedly gave her information to Yale over 20 years ago, and despite the fact that the unauthorized access of Plaintiff's information occurred around 10 years ago, Plaintiff's Amended Complaint stated—just two days after she received Yale's notice—that *"[a]s a result of the [Yale] data breach, [she] has suffered substantial harm."* Am. Compl. ¶ 23. Yet, Plaintiff fails to plead any facts to plausibly link her purported harms to the Yale security incident, as opposed to any *other* data breach or fraudulent activity that may have affected her personal information over the years. Indeed, Plaintiff acknowledges there were 656 data breaches in 2008 alone. Am. Compl. ¶ 15. Moreover, the "harms" Plaintiff complains of are too speculative to support Article III standing for her claims against Yale. Courts in other data breach cases have routinely disallowed each of these categories of "harms," particularly

where—like here—they cannot be fairly traced to the data breach in question. Finally, even if Plaintiff had standing to pursue her claims against Yale in the first instance (and she does not), those claims are subject to dismissal for the numerous independent reasons explained below.

## SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

A.    Yale Notifies Individuals About An Intrusion Of A Yale Database And Offers Identity Monitoring Services To Potentially Affected Individuals.

Approximately ten years ago, unauthorized third-parties gained electronic access to a Yale database. Am. Compl. ¶¶ 1, 2. The intruders extracted names and Social Security numbers of certain individuals. *Id.* ¶ 1. In some cases, the intruders also extracted other information, including dates of birth, Yale email addresses, and physical addresses. *Id.* Yale has reported that the intrusion affected approximately 119,000 individuals. *Id.* ¶ 2.

Yale discovered the intrusion on June 16, 2018 during a security review of certain Yale servers. *See* Ex. A, Sample Notice Letter.[2] Within weeks of discovering the intrusion, Yale began mailing notice letters to approximately 119,000 individuals whose information had been affected. Am. Compl. ¶¶ 1, 2. In the notice letters, Yale advised the affected individuals of the circumstances of the intrusion, and also informed them that the compromised database did not contain any of their financial information. *See* Ex. A.

While Yale has no indication that any of the affected individuals' information has been misused, Yale offered the affected individuals identity monitoring services, free of charge. *Id.* Yale also advised the affected individuals of steps they can take to protect their identity and to identify instances of fraudulent use of their sensitive personal information, as well as contact

---

[2] While Plaintiff did not attach the notice letter to her Amended Complaint, she included a link to a webpage with a copy of the letter. *See Booth v. Hartford Life & Accident Ins. Co. of Am.*, No. 3:08-cv-0013 (JCH), 2009 WL 652198, at *1 (D. Conn. Feb. 3, 2009) ("[F]or purposes of Rule 12(b)(6), the Complaint is deemed to include documents that are either attached to the Complaint, *or incorporated in it by reference*.") (emphasis added).

information for state attorneys general, the Federal Trade Commission, and the three major credit reporting agencies.  *Id.*

B.    Plaintiff's Claims.

On July 30, 2018, Plaintiff Julie Mason, a citizen of New York, received a letter from Yale regarding the intrusion, including an offer of free identity theft monitoring services.  Am. Compl. ¶ 23.  Two days later she filed this putative class action, seeking to bring claims on behalf of a proposed nationwide class of individuals whose personal information may have been affected by the intrusion.  *Id.* ¶ 26.

In her Amended Complaint, Plaintiff alleges that she applied for a visiting student program at Yale in or around 1996.  *Id.* ¶ 23.  Plaintiff further alleges generally that "[a]s part of the application process, Yale promised, and [Plaintiff] understood, that Yale would keep her Personal Information confidential and secured."  *Id.*

While Plaintiff pleads no further details about the information she provided to Yale with her application, or the promise that Yale allegedly made over two decades ago, she makes the conclusory allegation that "[a]s a result of the data breach," she has suffered "substantial harm." *Id.*  Without pleading any connection to the Yale incident, she alleges that "in or about 2009," she "was the victim of identity theft, which included her credit card accounts being compromised, and which necessitated her having to pay money for certified mail to send credit freeze requests to all three major credit reporting agencies."  *Id.*  Plaintiff also alleges that five years later in 2014, she "had approximately $60,000 stolen from one of her bank accounts," when "thieves were able to steal the funds by using . . . extracted PII [personal identifying information] to change the password on her online banking account over the telephone."  *Id.* Although Plaintiff alleges that she "devoted hours of her time to addressing the aftermath of the data breach" (*id.*), she does not say whether she was able to recover the $60,000 she claims was

stolen, or how she was able to trace her losses to the information in the application that she submitted to Yale in 1996. In addition to these alleged injuries, Plaintiff generally alleges that she incurred costs and expended time and effort dealing with the fraudulent activity (*id.*), "lost the time value" of the $60,000 that was allegedly stolen from her account (*id.*), and that the Yale breach has caused a "loss of value of [her] Personal Information" (*id.* ¶ 75).

Plaintiff asserts common law and statutory claims against Yale in her individual capacity and on behalf of a putative nationwide class and New York subclass. Specifically, Plaintiff asserts claims for: (i) negligence; (ii) violation of Connecticut's data breach notification statute, C.G.S.A. § 36a-701b (and a related violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S.A. § 42-110b); (iii) violation of New York's data breach notification statute, N.Y. Gen. Bus. Law § 899-aa; and (iv) violation of New York's unfair and deceptive trade practices act, N.Y. Gen. Bus. Law §§ 349 *et seq.* Plaintiff's Amended Complaint seeks an award of unspecified compensatory, statutory, and punitive damages, attorney's fees, and various types of injunctive relief.

## ARGUMENT

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true," to satisfy Article III standing requirements and "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Schwartz v. HSBC Bank USA, N.A.*, Nos. 17-2212-cv, 17-2309-cv, 2018 WL 4360896, at *2 (2d Cir. Sept. 13, 2018) (applying *Iqbal* to pleading requirements for standing and holding that a plaintiff must plead "injury-in-fact" both "affirmatively and plausibly"). The standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'naked assertion[s]' devoid of 'further factual enhancement'"; mere "labels and conclusions"

or a "formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). On a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Freeman v. United States*, 166 F. Supp. 3d 215, 218 (D. Conn. 2016) (citation omitted).

Plaintiff's Amended Complaint fails to pass muster under Rules 12(b)(1) and 12(b)(6). First, courts around the country have repeatedly dismissed similar data breach complaints for lack of standing where the plaintiff fails to allege an "injury-in-fact" that is "fairly traceable" to the conduct of the organization that suffered the breach. Data breaches are an unfortunate consequence of the digital age, yet Plaintiff fails to identify any specific facts that would substantiate her claim that *Yale*—as opposed to some other actor—caused the injuries she alleges over a five year period. Second, even if Plaintiff did have standing to bring a claim against Yale, and even if all the allegations in the Amended Complaint are accepted as true, each claim still fails as a matter of law for the reasons set forth below. Accordingly, Plaintiff's Amended Complaint should be dismissed with prejudice.

## I.      **Plaintiff Lacks Article III Standing**.

To establish standing under Article III of the U.S. Constitution, Plaintiff bears the burden of showing that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To avoid dismissal, Plaintiff must put forth allegations to support Article III standing that are sufficient to satisfy the *Iqbal* and *Twombly* pleading standards. *See Schwartz*, 2018 WL 4360896, at *2. Or as another district court in this Circuit put it when dismissing claims arising out of a much larger data breach involving craft store Michaels: "The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiff[ ] because

subject matter jurisdiction must be shown affirmatively." *See Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 579, 582 (E.D.N.Y. 2015) ("*Whalen I*") (finding no standing where plaintiff asserted various claims against retail store for alleged harms arising out of a data breach affecting customers' payment card information), *aff'd*, 689 F. App'x 89 (2d Cir. 2017) (*"Whalen II"*).

Here, Plaintiff fails to meet the minimum requirements of Article III standing because she fails to plausibly allege an injury-in-fact that is fairly traceable to Yale's alleged conduct. The Court should therefore dismiss this case for lack of subject matter jurisdiction.

A.   Plaintiff Has Not Pled Sufficient Factual Allegations To Establish A Cognizable Injury-In-Fact.

To establish an injury-in-fact, Plaintiff must show that her injury is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (citation omitted). While injury that is "imminent" may support standing, any "threatened injury must be *certainly impending* to constitute injury in fact"; "allegations of *possible future injury* are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration and quotation marks omitted) (emphasis added). As the Supreme Court explained in *Lujan v. Defenders of Wildlife*, the concept of imminence "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." 504 U.S. 555, 564-65 n.2 (1992) (no standing where there was no "'actual or imminent' injury") (citation omitted).

In her Amended Complaint, Plaintiff claims that she has suffered the following "substantial harm[s]" as a result of the Yale data breach: (i) in 2009, she "was the victim of identity theft, which included her credit card accounts being compromised," and in 2014, she "had approximately $60,000 stolen from one of her bank accounts," and "lost the time value of

those monies" (Am. Compl. ¶ 23); (ii) time spent for telephone calls and visits to the bank and police department concerning the account fraud (*id*.); (iii) "an increased, imminent risk of fraud and identity theft" (*id*. ¶ 75); (iv) costs she incurred by "having to pay money for certified mail to send credit freeze requests to all three major credit reporting agencies" (*id*. ¶ 23); and (v) "loss of value of [her] Personal Information" (*id*. ¶ 75).  None of these alleged harms satisfies Article III's requirement of injury-in-fact.

*First*, setting aside that the information at issue in the Yale incident did not even include any payment card or financial account information, Plaintiff's vague allegations of credit card and bank account fraud are not cognizable harms because Plaintiff does not allege she was held responsible for—and thus suffered any out-of-pocket loss from—those instances.[3]  Where "[t]here are no allegations that [a plaintiff] was required to pay [fraudulent] charges," allegations of fraud on financial accounts will not alone confer standing.  *Whalen I*, 153 F. Supp. 3d at 580-81.  This is because of zero-fraud-liability policies offered by banks and card issuers, which reimburse a consumer for any fraudulent charges.  *See id*. (noting that even if "fraudulent charges" were incurred on a credit card, "[the plaintiff] would not have suffered any liability 'given the zero-fraud-liability policy of every major card issuer in the country'") (citation omitted).  Here, Plaintiff pleads no facts suggesting she was held personally responsible for any fraudulent card charges or account withdrawals, and she therefore cannot establish standing based solely on the fact that such fraudulent activity may have occurred.  Courts around the country have dismissed similar claims for the same reason.  *See Torres v. Wendy's Co.*, 195 F.

---

3 Indeed, while Plaintiff amended her Complaint to clarify that she was not reimbursed for certain costs incurred to send certified mail to credit reporting agencies, Plaintiff's Amended Complaint contains no allegation that she was not reimbursed the full $60,000 allegedly stolen from her bank account.  *Compare* Original Compl. (Dkt. No. 1) ¶ 22 *with* Am. Compl. (Dkt. No. 40) ¶ 23.

Supp. 3d 1278, 1283 (M.D. Fla. 2016) (dismissing case for lack of standing where the plaintiff "ha[d] not alleged that the two fraudulent charges went unreimbursed by his credit union and ha[d] experienced no additional actual harm since then"); *Provost v. Aptos, Inc.*, No. 1:17-cv-02120-ELR, 2018 WL 1465766, at *3 (N.D. Ga. Mar. 12, 2018) (plaintiff who failed to allege that "she requested reimbursement from her bank or that she was denied such reimbursement" suffered no injury); *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *6 (N.D. Ill. Sept. 3, 2013) (finding no standing where plaintiff did not allege fraudulent card charges were not reimbursed).[4]

**Second,** the time Plaintiff allegedly spent for "telephone calls and visits to the [bank and] police department regarding the $60,000 theft" cannot confer Article III standing.  As an initial matter, Plaintiff's allegations with respect to lost time are insufficient because she has "pleaded no specifics about any time or effort" she spent with respect to the $60,000 fraud.  *Whalen II*, 689 F. App'x at 91.  Indeed, Plaintiff alleges no facts to show how much time she spent, what the purposes of her purported calls and visits were, or why they were necessary.  Moreover, lost time is not a compensable injury under Connecticut law unless it represents lost income or earnings, *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 309, 311 (S.D.N.Y. 2018), and Plaintiff does not allege she lost wages or any other income as a result of the unspecified time she spent on phone calls or visits to the bank or police department.  *See In re Hannaford*

---

[4] In her Amended Complaint, Plaintiff added a vague allegation that she "lost the time value" of the $60,000.  Am. Compl. ¶ 23.  Federal courts do not accept such bare allegations as sufficient to confer Article III standing.  *See Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014) (plaintiff's "bare allegation that it has lost [time value of money] . . . sets out an injury that is too abstract and indefinite to confer Article III standing"); *Taylor v. Fed. Aviation Admin.*, No. 18-cv-00035 (APM), 2018 WL 6172498, at *4 (D.D.C. Nov. 26, 2018) (finding that "accepting the lost time value of money as a cognizable constitutional injury is far from well established" and rejecting plaintiff's alleged "lost time value" injury where he did not allege any *specific* facts suggesting he would have invested the funds at issue or otherwise taken steps to increase their value).

*Bros. Co. Customer Data Sec. Breach Litig.*, 4 A.3d 492, 496, 2010 ME 93, 496 (Me. 2010) (holding that "time and effort" spent dealing with effects of data breach is not a cognizable injury under Maine law, where—like in Connecticut—injury of lost time is limited to loss of earning capacity or wages).

*Third,* Plaintiff's allegations of an increased risk of fraud or identity theft do not establish cognizable harm sufficient to support standing. "Where . . . a complainant 'surmises that, as a result of [a] security breach, he [or she] faces an increased risk of identity theft at an unknown point in the future,' the 'claimed injury [is] in the realm of the hypothetical.'" *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060 (RMB)(RLE), 2010 WL 2643307, at *6 (S.D.N.Y. June 25, 2010) (dismissing claims for lack of standing) (citation omitted) (alterations in original); *see also Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (risk of future harm is "too speculative to constitute an injury-in-fact"), *cert. denied*, 137 S. Ct. 2307 (2017); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 40, 44 (3d Cir. 2011) (increased-risk-of-identity-theft theory is too hypothetical and speculative to establish "certainly impending" injury-in-fact).

*Fourth*, any expenses that Plaintiff voluntarily incurred to guard against an alleged risk of future harm—such as the cost of certified mail to obtain credit freezes (Am. Compl. ¶ 23)—are insufficient to confer standing. *See Clapper*, 568 U.S. at 402 (a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); *Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735, 754 (W.D.N.Y. 2017) (where alleged risk of harm is not cognizable, "mitigation efforts against that future harm cannot confer standing"). Moreover, generic allegations about time and effort spent "addressing the aftermath" of a data breach do not establish an injury-in-fact. *See Whalen II,* 689

F. App'x at 90-91 (finding lack of standing where plaintiff "pleaded no specifics about any time or effort that she herself has spent monitoring her credit").

*Fifth*, "[c]ourts have rejected allegations that the diminution in value of personal information can support standing." *Fero*, 236 F. Supp. 3d at 755; *see also In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015) (rejecting loss-in-value-of-PII basis for standing). Courts also "have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016). Here, Plaintiff offers nothing more than the conclusory statement that she suffered a "loss of value of [her] Personal Information" (Am. Compl. ¶ 75), which is plainly insufficient to constitute an injury-in-fact. "[W]ithout allegations about how her [personal] information lost value, [plaintiff] does not have standing on this ground." *Whalen I,* 153 F. Supp. 3d at 582.

### B.   Plaintiff Has Not Plausibly Alleged Any Injury Fairly Traceable To Yale's Conduct.

In addition to failing to allege a *per se* cognizable injury sufficient to satisfy Article III's injury-in-fact requirement, Plaintiff has also failed to plead facts showing any of her purported injuries are "fairly traceable to the challenged conduct of [Yale]." *Spokeo*, 136 S. Ct. at 1547. "While demonstration of an injury is necessary to prove standing, it alone is not sufficient." *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999). The traceability element of Article III standing requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560-61 (citation omitted) (alterations omitted).

Here, Plaintiff has not alleged a causal connection between the Yale data breach and any of her purported injuries sufficient to satisfy Article III's traceability requirement. She instead asks the Court to simply assume that the alleged compromise of her credit cards in 2009 and bank fraud in 2014 resulted directly from the personal information affected by the Yale security incident in 2008 or 2009. *See, e.g.,* Am. Compl. ¶ 23 ("As a result of the data breach, [Plaintiff] has suffered substantial harm.") and ¶ 49 ("Yale's breach of its duties has directly and proximately injured Plaintiff . . . ."). Unfortunately, data breaches today are commonplace—Plaintiff recognizes there were 656 breaches reported in 2008 (*id.* ¶ 15)—and Plaintiff does not plead that her personal information was not stolen in any other data breaches. It is therefore left to speculation whether any of Plaintiff's claimed injuries can be traced to the Yale data breach and not some other breach or fraudulent act. *See Hammond*, 2010 WL 2643307, at *13 (finding lack of standing where plaintiffs failed to allege sufficiently any credit card fraud that was causally connected to the loss of the data at issue); *Doe v. Quest Diagnostics, Inc.*, No. 15-cv-8992 (LGS), 2017 WL 1102663, at *3 (S.D.N.Y. March 23, 2017) (traceability not shown where plaintiff included only "conclusory allegation" that defendant "'breached its duty' . . . and thereby 'proximately caused' the release of Plaintiff's information") (citation omitted).

Additionally, while Plaintiff points to fraud on her credit cards and bank account, she alleges only that her "name and Social Security number (and likely her date of birth)" were stolen in the Yale data breach. Am. Compl. ¶ 23. Importantly, as the notification letter Plaintiff cites in her Amended Complaint specifically stated, "[t]he [affected] database did not contain any financial information about [Plaintiff]." *See* Ex. A. Plaintiff puts forth nothing—beyond conclusory allegations—to suggest how the information affected in the Yale breach (*i.e.*, her name, Social Security number, and maybe date of birth) was somehow used to carry out the

11

alleged credit card and bank fraud.  In sum, Plaintiff's conclusory allegations of causation do not affirmatively establish that her purported injuries are fairly traceable to Yale's conduct.

Plaintiff's claims should therefore be dismissed for lack of subject matter jurisdiction.

## II.     Plaintiffs' Negligence Claim Fails As A Matter Of Law.

In Connecticut, "'[a] cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury.'"  *Lawrence v. O & G Indus., Inc.*, 319 Conn. 641, 649, 126 A.3d 569, 574 (2015) (citation omitted) (alteration added).  Even if Plaintiff could establish each those elements (and she cannot), her negligence claim is barred by Connecticut's three-year statute of limitations governing tort claims, C.G.S.A. § 52-577.  Additionally, Plaintiff fails to allege any legal duty Yale owed to her, and even if she could point to a relevant duty, she fails to allege how Yale's purported breach of that duty proximately caused her to incur actual damages.  Plaintiff's negligence claim should therefore be dismissed.

### A.     Plaintiff's Negligence Claim Is Barred By The Statute Of Limitations.

Plaintiff's negligence claim sounds in tort.  Under C.G.S.A. § 52-577, "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."  "This statute is . . . an occurrence statute, 'meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs.'"  *Holten v. Standard Parking Corp.*, 98 F. Supp. 3d 444, 453 (D. Conn. 2015) (citation omitted).  It is well-established that the three-year limitations period is not delayed until the plaintiff discovers some harm resulting from tortious conduct.  *See Valentine v. LaBow*, 95 Conn. App. 436, 445 n.8, 897 A.2d 624, 631 n.8 (2006) (finding that Connecticut case law "clearly dictates § 52–577 is an occurrence statute and that its limitation period does not begin 'when the plaintiff first discovers an injury'") (citation omitted); *Certain Underwriters at Lloyd's, London v. Cooperman*, 289 Conn. 383, 408, 957 A.2d 836, 850 (2008) ("'[T]he history

12

of th[e] legislative choice of language [in § 52-577] precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred.'") (alterations added) (citation omitted).  Here, Plaintiff's negligence claim is premised on alleged negligent conduct by Yale in 1996 when she applied to one of Yale's programs, almost 20 years beyond the applicable three-year statute of limitations.  Am. Compl. ¶ 23.  Her negligence claim should therefore be dismissed.

    B.  <u>Plaintiff Has Not Alleged A Legal Duty Yale Owed To Her</u>.

    Plaintiff's negligence claim would still fail even if it was not barred by the statute of limitations.  Plaintiff alleges that Yale owed her a duty to "design and employ cybersecurity systems, anti-hacking technologies, and intrusion detection and reporting systems sufficient to protect [her] PII from unauthorized access and to promptly alert Yale to any such access and enable it to determine the extent of any compromised PII."  Am. Compl. ¶ 45.  "'Whether a duty exists is a question of law for the court . . . .'"  *Lawrence*, 319 Conn. at 649, 126 A.3d at 574.  While Yale recognizes the importance of safeguarding personal information, there is no *legal duty* under Connecticut law to safeguard the categories of information upon which Plaintiff bases her negligence claim.

    "'[T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case.'"  *Lawrence*, 319 Conn. at 649-50, 126 A.3d at 574-75 (citation omitted)

(alteration in original).  The allegations in Plaintiff's Amended Complaint fail to meet each of these requirements.

First, Plaintiff has not alleged facts suggesting that Yale should have anticipated that the alleged deficiencies that purportedly existed in its cybersecurity systems and procedures ten years ago would result in criminal third-parties using her personal information to carry out identity theft and financial fraud.  Plaintiff states only in conclusory fashion that "[i]t was reasonably foreseeable that [Yale's deficiencies] would expose [Plaintiff's] PII to criminals and other unauthorized access."  Am. Compl. ¶ 48.  But "'[a] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists.'" *Soares ex rel. Estate of Soares v. George A. Tomasso Constr. Corp.*, 66 Conn. App. 466, 471, 784 A.2d 1041, 1044 (2001) (citation omitted) (alterations added and omitted).  "Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed."  *RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 386-88, 650 A.2d 153, 156-57 (1994) (refusing to recognize new duty under Connecticut law "[i]n the absence of a controlling statute or overriding public policy consideration," despite finding that injury was foreseeable).  In sum, Plaintiff has not alleged any facts sufficient to show that Yale knew, or should have known, that its cybersecurity systems and practices in 2008-2009, or at any time before or after that time period, would result in the harms of which Plaintiff now complains.  Lacking such factual allegations, the Amended Complaint does not establish any legal duty Yale owed to Plaintiff.

Second, even if Plaintiff could allege facts showing that Yale anticipated (or should have anticipated) that its conduct would likely result in Plaintiff's alleged injuries, the Court should not impose a duty on Yale under the circumstances here.  No court has held that there is a legal duty under Connecticut law to safeguard individuals' personal information from misuse by

14

criminal third-parties, and there is no relevant statute upon which to premise such a duty.[5]  The circumstances of this case—involving thin factual allegations about a data breach occurring around ten years ago, coupled with highly speculative damages—do not warrant imposition of a legal duty that has never before been recognized in Connecticut.  *See Waters v. Autuori*, 236 Conn. 820, 828, 676 A.2d 357, 361 (1996) (declining to impose new duty where plaintiff "alleged no privity of contract or statutory duty upon which to premise [such] a duty of care").

Finally, Plaintiff incorrectly asserts that Yale "created [a] duty through its voluntary actions in collecting [Plaintiff's PII] . . . , as well as by its assurances (in its Privacy Policy and elsewhere) that it would safeguard [her] information."  Am. Compl. ¶ 43.  No Connecticut court has held that a legal duty to safeguard personal information exists, even if that information was "voluntarily" collected.  Furthermore, Connecticut has adopted Section 323 of the Restatement (Second) of Torts, *see Grenier v. Commissioner of Transportation*, 306 Conn. 523, 547, 51 A.3d 367, 384 (2012), which provides that a gratuitously undertaken duty extends only to preventing "*physical* harm" to "[an]other's person or things," quoting 2 Restatement (Second) of Torts § 323 (emphasis and alteration added), and Plaintiff alleges no *physical* injury to herself or her property.  Plaintiff also fails to identify any "assurances" that Yale made to her "in its Privacy

---

[5] Yale acknowledges that in *Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.*, the Supreme Court of Connecticut recently held that "a duty of confidentiality arises from the physician-patient relationship and that unauthorized disclosure of confidential information obtained in the course of that relationship for the purpose of treatment gives rise to a cause of action sounding in tort against the health care provider, unless the disclosure is otherwise allowed by law."  327 Conn. 540, 567-68, 175 A.3d 1, 17 (2018).  Plaintiff alleges that her relationship with Yale as an applicant to a visiting program in 1996 "is sufficiently close and akin to privity to give rise to a duty" to protect her information (Am. Compl. ¶ 44), but she fails to identify a contract violated by Yale, she does not complain that Yale lost her personal *health* information, and the *Byrne* decision was motivated in large part by Connecticut's recognition of a patient-physician privilege.  *Bryne*, 327 Conn. at 550, 175 A.3d at 7.  Moreover, Yale is unaware of any privilege in Connecticut or elsewhere that pertains to the applicant-university relationship.

Policy and elsewhere."   Plaintiff observes that Yale maintains an "official policy" on its website (Am. Compl. ¶ 43, n.12), but that document is an internal school document governing how Yale's faculty and staff use certain information and the potential disciplinary actions that may be taken for violation of its terms.   *See* https://your.yale.edu/policies-procedures/policies/1602-protecting-security-and-confidentiality-social-security-numbers; *Booth*, 2009 WL 652198, at *1 ("[F]or purposes of Rule 12(b)(6), the Complaint is deemed to include documents that are . . . incorporated in it by reference.").   Plaintiff fails to allege how this internal policy—which she does not allege she ever read or relied on—could impose a legal duty that does not otherwise exist under Connecticut law.   Indeed, the policy plainly states that it became effective October 1, 2008, which is nearly twelve years *after* Plaintiff provided her information to Yale (Am. Compl. ¶ 23) and *after* the breach began (*id.* ¶ 2).[6]

Plaintiff's negligence claim should therefore be dismissed for lack of any recognized legal duty on which to base her claim.

C.   Plaintiff Fails To Plead Proximate Causation.

Even if Plaintiff could point to a legally recognized duty on the part of Yale, her negligence claim would still fail because she has not sufficiently pled that Yale's breach of any hypothetical duty proximately caused her injuries.   While proximate cause is generally a question of fact, "it becomes a question of law when the mind of a fair and reasonable person could reach only one conclusion." *Medcalf v. Washington Heights Condo. Ass'n, Inc.*, 57 Conn. App. 12, 17,

---

[6] Further, while Yale is unaware of any court accepting a negligence theory premised on a duty arising from a general privacy policy, courts routinely reject contract claims in data breach cases when premised solely on such a policy. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 980–81 (N.D. Cal. 2016) (dismissing breach of contract claim where plaintiffs failed to allege that privacy notices at issue had been incorporated into a *valid contract*); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004) ("[B]road statements of company policy do not generally give rise to contract claims.  As such, the alleged violation of the privacy policy at issue does not give rise to a contract claim.") (internal citation omitted).

747 A.2d 532, 535–36 (2000).  Proximate cause limits liability for certain negligent acts by "'determining how far down the causal continuum individuals will be held liable for the consequences of their actions.'"  *Id.* (citation omitted).  To establish proximate cause, Plaintiff "'bears the burden to prove an unbroken sequence of events that tied h[er] injuries to [Yale's conduct].'"  *Winn v. Posades*, 91 Conn. App. 610, 614-15, 881 A.2d 524, 527 (2005) (citation omitted) (alteration added), *aff'd*, 281 Conn. 50, 913 A.2d 407 (2007).

Here, the harms Plaintiff alleges she incurred are too far down the causal continuum to warrant imposing liability on Yale.  As discussed above, Plaintiff alleges only that her name, Social Security number, and likely her date of birth were disclosed in the breach, yet she states in conclusory fashion that *this particular disclosure* of some of her personal information (which did *not* include any payment card or financial account information) directly caused fraudulent charges on her credit cards and theft from her bank account.  Am. Compl. ¶ 23.  But any harm Plaintiff may have suffered was ultimately caused by the acts of the third-party "thieves" who, as she acknowledges, "were able to steal the funds" from her bank account, not Yale.  *See Medcalf*, 57 Conn. App. at 17, 747 A.2d at 536 ("'As a general rule, the act of a third person in committing an intentional act or crime is a superseding cause of harm to another resulting therefrom . . . .'") (citation omitted); *Martino v. LeRose*, No. CV075002004S, 2007 WL 4686480, at *4 (Conn. Super. Ct. Nov. 30, 2007) ("Courts have held intentional criminal actions to be valid superseding causes.").

Under these circumstances, the connection "between [Yale's] conduct, on the one hand, and the [alleged] consequences to [Plaintiff], on the other hand . . . is simply too tenuous to impose liability."  *RK Constructors, Inc.*, 231 Conn. at 387–88, 650 A.2d at 156–57 (footnote omitted).

D.     Plaintiff Fails To Allege Actual Injury.

Finally, Plaintiff's negligence claim should also be dismissed because she has not alleged

any actual injury for which she can recover.  "[C]onduct that is merely negligent, without proof

of an actual injury, is not considered to be a significant interference with the public interest such

that there is any right to complain of it, or to be free from it."  *Right v. Breen*, 277 Conn. 364,

377, 890 A.2d 1287, 1294 (2006).  Plaintiff alleges four general categories of harms: (i) "identity

theft" and "compromised" credit card accounts in 2009, and stolen bank funds in 2014 (along

with the "lost [ ] time value of those monies"); (ii) time spent for telephone calls and visits to the

bank and police department concerning the 2014 account fraud; (iii) an "increased, imminent risk

of fraud and identity theft"; (iv) cost incurred and time and effort spent mitigating that alleged

risk; and (iv) "loss of value" of her personal information.  Am. Compl. ¶¶ 23, 75.  As explained

above, those alleged harms are not legally cognizable for purposes of Article III standing, but

even if they met standing requirements, they would still not be able to support a negligence claim

for many of the same reasons.

In *McLoughlin v. People's United Bank, Inc.*, a case arising out of the loss of electronic

banking data that was managed by BNY Mellon, Judge Bryant found that the courts of

Connecticut would not recognize an increased risk of harm as sufficient to support a negligence

claim.  No. 3:08-cv-00944 (VLB), 2009 WL 2843269, at *8 (D. Conn. Aug. 31, 2009).  And

while the court in *McLoughlin* left open the question of whether an increased risk of harm could

constitute actual injury where there was actual malfeasance or identity theft, Plaintiff has not

alleged any legally cognizable harms with respect to the fraudulent charges or stolen funds

(which she does not allege caused her any out-of-pocket loss); her costs and effort incurred to

mitigate risks stemming from the data breach (which are not cognizable under *Clapper* and its

progeny); or the loss of value of her information (a theory that has been routinely rejected—*e.g.*,

*Fero*, *In re Zappos.com, Inc.*, *Welborn*, and *Whalen I*, discussed above).  Accordingly, alleging a "risk of harm" theory in conjunction with other non-harms—as Plaintiff does here—cannot together fabricate an actual injury sufficient to support a negligence claim.

Plaintiff's negligence claim should therefore be dismissed.

**III.    Plaintiff's Claims Under The Connecticut And New York Data Breach Statutes Fail As A Matter Of Law Because There Is No Private Right of Action Under Those Statutes.**

Plaintiff's claims under the Connecticut and New York data breach statutes also fail on the independent ground that those statutes do not provide for a private right of action.

A.    <u>There Is No Private Right Of Action Under C.G.S.A. § 36a-701b</u>.

In Count II of her Amended Complaint, Plaintiff asserts a claim arising out of Yale's alleged  violation of Connecticut's data breach statute, C.G.S.A. § 36a-701b.  Am. Compl. ¶ 56. However, the Connecticut General Assembly clearly mandated that any alleged "[f]ailure to comply with the requirements of th[e statute] . . . *shall be enforced by the Attorney General*." C.G.S.A. § 36a-701b (emphasis added).  The General Assembly did not create a private right of action under the statute.  *Id.*  For that reason, in the one reported case analyzing C.G.S.A. § 36a-701b which arose out of the Target data breach, the court dismissed a claim brought by private litigants under the statute because it "clearly limits enforcement power to the state's attorney general."  *See In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1168 (D. Minn. 2014).

Notwithstanding the absence of a private right of action under C.G.S.A. § 36a-701b, Plaintiff suggests in Count II of her Amended Complaint that a violation of the statute constitutes an unfair trade practice under the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S.A. §§ 42-110a, *et seq.*, and therefore she has standing to allege violations of C.G.S.A. § 36a-701b under CUTPA.  *See* Am. Compl. ¶¶ 58, 60.  But the General Assembly foreclosed that possibility

as well.  The Connecticut data breach statute plainly states that a violation "shall constitute an unfair trade practice for purposes of section 42-110b and *shall be enforced by the Attorney General*."  C.G.S.A. § 36a-701b(g) (emphasis added); *see PJM & Assocs., LC v. City of Bridgeport*, 292 Conn. 125, 138, 971 A.2d 24, 32 (2009) ("'[I]n construing statutes, [courts] presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous.'") (second alteration added) (citation omitted).

Moreover, even if section 36-701b had provided for a private right of action through CUTPA (which it does not), Plaintiff fails to state a claim because she admits that Yale promptly sent her a notification approximately six weeks after discovering the breach (Am. Compl. ¶¶ 10, 23, 55).  *See* C.G.S.A. § 36a-701b (mandating notice within ninety days of the discovery of the breach).  Accordingly, Count II should be dismissed.[7]

B.  There Is No Private Right Of Action Under N.Y. Gen. Bus. Law § 899-aa.

In Count III, Plaintiff asserts a separate claim for violation of New York's data breach statute, N.Y. Gen. Bus. Law § 899-aa.  But like Connecticut's statute, the New York data breach statute vests the attorney general of that state with the exclusive right to bring "an action in the name and on behalf of the people of the state of New York . . . to enjoin and restrain the

---

[7] Even if Plaintiff could pursue a claim under the statute (and she cannot), she would be prohibited from bringing a class action claim.  In her Amended Complaint, Plaintiff clarifies that Count II is brought under CUTPA, which limits the ability to bring class actions to those "who are residents of [Connecticut] or injured in [Connecticut]."  C.G.S.A. § 42-110g(b); *see In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 115 (D. Conn. 2014) ("[N]one of the named Plaintiffs are Connecticut residents, and none of the Plaintiffs were injured in Connecticut. Therefore, the terms of CUTPA and the state's jurisprudence prohibit the Plaintiffs from bringing a class action on behalf of a national class."), *aff'd sub nom.*, *Williams v. Affinion Group, LLC*, 889 F.3d 116 (2d Cir. 2018); *Metro. Enter. Corp. v. United Technologies Int'l, Corp., Pratt & Whitney Large Commercial Engines Div.*, No. 3:03cv1685 (JBA), 2004 WL 1497545, at *4 (D. Conn. June 28, 2004) (same).  Plaintiff alleges she is a New York resident (Am. Compl. ¶ 23), and she does *not* allege she was injured in Connecticut.  Thus, even if she could assert a private claim for violation of Connecticut's data breach statute, she would only be able to assert it in her individual capacity.  *See* C.G.S.A. § 42-110g(a) (applying to individual, non-class CUTPA claims).

20

continuation of such violation." N.Y. Gen. Bus. Law § 899-aa. The New York State Legislature did not create a private right of action under the statute. *Id*. Therefore, courts have repeatedly dismissed similar statutory claims brought by private litigants, recognizing that "no private right of action exists with respect to General Business Law § 899–aa." *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 858 (N.Y. Sup. Ct. 2015); *see also Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735, 777 (W.D.N.Y. 2017) (same); *Torres v. Wendy's Int'l, LLC*, No. 6:16-cv-210-Orl-40DCI, 2017 WL 8780453, at *6 (M.D. Fla. Mar. 21, 2017) (same). This Court should dismiss Count III for the same reason.

**IV.     Count IV Should Be Dismissed Because Plaintiff Fails To State A Claim Under N.Y. Gen. Bus. Law § 349.**

Plaintiff alleges that Yale violated New York's unfair trade practices act, N.Y. Gen. Bus. Law § 349, by, among other things (i) "[f]ailing to implement and maintain reasonable security and privacy measures" to protect her personal information; (ii) "[m]isrepresenting that it would protect the privacy and confidentiality" of her information; and (iii) "[o]mitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy" of her information. Am. Compl. ¶ 72. As explained below, Plaintiff's claim is subject to dismissal on numerous grounds.[8]

    A.     <u>Plaintiff's Section 349 Claim Is Barred By The Three-Year Statute Of Limitations</u>.

Plaintiff's Section 349 claim fails because the deceptive transaction on which she purports to base her claim occurred over twenty years ago, far outside the applicable three-year

---

[8] As previously explained, the Court need not delve into Plaintiff's Section 349 claim because she lacks Article III standing to bring such a claim. *See Whalen I,* 153 F. Supp. at 582 (dismissing Section 349 claim in data breach case and noting that a claimant cannot "merely assert[ ] a violation of [Section] 349" to establish standing, she must show that she "'suffered an actual injury'") (citation omitted).

statute of limitations.  *See* N.Y. C.P.L.R. § 214(2) (applying three-year limitations period to "an action to recover upon a liability, penalty or forfeiture created or imposed by statute"); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 513 (S.D.N.Y. 2016) ("A § 349 claim is subject to a three-year statute of limitations, and the claim accrues on the date of the alleged deceptive act.").  Even assuming Plaintiff has sufficiently alleged a deceptive transaction to support a Section 349 claim (and she has not), her Amended Complaint confirms that the transaction occurred in 1996 when she applied to the program at Yale, and when Yale purportedly misrepresented how it would handle and store Plaintiff's personal information.  Am. Compl. ¶ 23.  Importantly, "[a]ccrual of [Section 349] claims are 'not dependent upon any date when discovery of the alleged deceptive practice is said to occur,'" but rather "when a plaintiff is injured by the actions alleged to have violated the statute." *Gould v. Helen of Troy Ltd.*, No. 16 Civ. 2033 (GBD), 2017 WL 1319810, at *2 (S.D.N.Y. Mar. 30, 2017) (citation omitted). Plaintiff's Section 349 claim should therefore be dismissed for being outside the three-year limitations period.[9]

> B.    Section 349 Does Not Apply Because Plaintiff Alleges No Deceptive Transaction That Occurred In New York.

Even if Plaintiff's claim is not barred by the three-year statute of limitations, Section 349 only declares unlawful "deceptive acts or practices" that occurred "in [New York]."  N.Y. Gen. Bus. Law § 349.  Thus, to bring a claim under Section 349 "the transaction in which the consumer is deceived *must occur in New York*." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 1195 (N.Y. 2002) (emphasis added); *see Kaufman v. Sirius XM*

---

[9] Nor has Plaintiff alleged a case for tolling of the applicable limitations period.  For tolling to apply, a plaintiff must show that—*after* the deceptive transaction occurred—the defendant took further steps to conceal that transaction. *See Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 789, 967 N.E.2d 1177, 1184 (2012) (dismissing Section 349 claim upon finding that plaintiffs "have not alleged an act of deception, separate from the ones for which they sue, on which an equitable estoppel could be based").

*Radio, Inc.*, 474 F. App'x 5, 8 (2d Cir. 2012) (Section 349 only applies to "'intrastate transactions in New York'") (citation omitted); *Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580, 587 (N.Y. App. Div. 2010) ("[Section] 349 requires the deceptive transaction to have occurred in New York.").

As explained below, Plaintiff fails to specify any details about the particular deceptive transaction upon which she bases her Section 349 claim—her application to a visiting program at Yale in the mid-1990s.  Nor does she provide any details about any promises that Yale allegedly made to her during the application process.  But even if the conduct Plaintiff complains of could be found to fall within the prohibitions of Section 349 (and it cannot), Plaintiff does not allege any deceptive conduct *in New York*.  Indeed, most of the alleged conduct Plaintiff identifies occurred in Connecticut, where Yale is located, and Plaintiff has not alleged otherwise.  *See, e.g.,* Am. Compl. ¶ 72(a)-(c) (alleging that Yale violated Section 349 by "[f]ailing to implement and maintain reasonable security and privacy measures"; "[f]ailing to identify foreseeable security and privacy risks"; and "[f]ailing to comply with common law and statutory duties pertaining to the security and privacy" of Plaintiff's information).  Those allegations cannot support a Section 349 claim because they relate to conduct that could not plausibly have occurred in New York.  *See Goshen*, 98 N.Y.2d at 324-25, 774 N.E.2d at 1195 (noting that Section 349 "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York"); *see also Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10 Civ. 3314, 2018 WL 2084168, at *9 (S.D.N.Y. May 1, 2018) (dismissing case and finding that "because the transactions at issue did not occur in New York, the § 349 claim fails").

Beyond her allegations of conduct that necessarily would have occurred *at Yale* in Connecticut, Plaintiff also alleges that Yale violated Section 349 by (i) "[m]isrepresenting" that

it would protect her information and comply with unspecified laws "pertaining to the security and privacy" of her information, and (ii) "[o]mitting, suppressing, and concealing" that it did not protect her information and comply with those unspecified laws.  Am. Compl. ¶ 72(d)-(g).  But Plaintiff alleges *no* facts showing that any purported misrepresentations or omissions occurred in New York.  While Plaintiff amended her Complaint to further allege that she "completed her application . . . while she was physically located in New York," "mailed her application to [Yale] from New York," and "paid with funds from a New York bank" (*id.* ¶ 23), she has still yet to identify with any specificity what the purported misrepresentations or omissions were or how they were communicated to her, much less any facts establishing such misrepresentations or omissions occurred in New York.  To the contrary, Plaintiff concedes that "a substantial part of the events giving rise to Plaintiff's claims took place within th[e District of Connecticut]."  *Id.* ¶ 22.  Without any factual allegations plausibly showing that a deceptive transaction occurred *in New York*, Plaintiff's Section 349 claim should be dismissed.  *See Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010) (dismissing Section 349 claim where plaintiff did not "allege[ ] sufficient facts from which [the court] could reasonably deduce that [plaintiff] (or any similarly-situated non-New York residents) was deceived in New York."), *aff'd,* 474 F. App'x 5 (2d Cir. 2012).

      C.     <u>Plaintiff's Section 349 Claim Also Fails To Plead Essential Elements Of The Claim</u>.

Setting aside that her claim is subject to dismissal because it was filed outside the three-year limitations period *and* does not pertain to any deceptive transaction in New York, Plaintiff also fails to plead the necessary elements of a Section 349 claim.  To bring a valid Section 349 claim, a Plaintiff must allege three elements: first, "that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff

suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608, 611 (N.Y. 2000). Plaintiff has failed to allege each of these required elements.

*First*, Plaintiff has not plausibly alleged that Yale conducted an act or practice that was "misleading in a material way." *Id.* Plaintiff alleges that Yale failed to "implement and maintain reasonable security and privacy measures," "identify foreseeable security and privacy risks," and "comply with common law and statutory duties." Am. Compl. ¶ 72(a)-(c). But as a New York trial court found in another data breach case, none of those alleged failures, standing alone, could have "misled" the Plaintiff for purposes of Section 349. *See Abdale*, 19 N.Y.S.3d at 859–60 (dismissing Section 349 claim because the "[d]efendants' alleged failure to safeguard plaintiffs' [personal information] from theft did not *misle[ad]* the plaintiffs in any material way and does not constitute a deceptive practice within the meaning of the statute") (emphasis added). And Plaintiff's conclusory allegations that Yale "misrepresent[ed]" that it would protect her information and comply with unspecified laws is unsupported by any facts. Plaintiff states that "[a]s part of the application process, Yale promised, and [Plaintiff] understood, that Yale would keep her Personal Information confidential and secured," and that "Plaintiff had understood that Yale would delete or destroy her 'unneeded' personal information." Am. Compl. ¶¶ 23, 72. Plaintiff does not, however, identify with any particularity what Yale allegedly promised her, or how that promise was conveyed, and she likewise alleges no basis for her purported "underst[anding]" that Yale would delete any of her data. These "'naked assertion[s]' devoid of 'further factual enhancement'" plainly do not meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *Iqbal*, 556 U.S. at 678 (citation omitted) (alteration in original). Plaintiff's Section 349 claim should therefore be dismissed for failure to plausibly allege that Yale conducted any act or practice that was "'misleading in a material way.'"

*Goshen*, 98 N.Y.2d at 325, 774 N.E.2d at 1196 (citation omitted); *see also Wilson v. Dantas*, 746 F.3d 530, 538 (2d Cir. 2014) (affirming district court order granting motion to dismiss promissory estoppel claim where the alleged promises were "neither clear nor unambiguous.").

**Second**, even if Plaintiff could sufficiently allege a materially misleading act or practice on the part of Yale that affected her (and she cannot), Plaintiff's Amended Complaint fails to allege how any such act or practice has a broad impact on consumers.  "A plaintiff alleging a cause of action pursuant to General Business Law § 349 'must demonstrate that the acts or practices have a broader impact on consumers at large.'"  *Graham v. Eagle Distrib. Co.*, 224 A.D.2d 921, 922, 637 N.Y.S.2d 583, 583-84 (N.Y. App. Div. 1996) (finding that a Section 349 claim "manifestly lacks merit" where "it does not state the nature of the material misrepresentations *made to the public at large*") (emphasis added).  New York enacted Section 349 to combat "'fraud against consumers, particularly the disadvantaged.'"  *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 774 (N.Y. App. Div. 1995) (citation omitted).  Here, the transaction at issue involved Plaintiff applying for a visiting student program at Yale, which is far from a commercial practice having a broad impact on the consuming public at large.  *See Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017) (transactions "that do not affect average consumers do not constitute consumer-oriented conduct"); *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (N.Y. App. Div. 2000) ("General Business Law Article 22–A, which includes section 349, is intended to protect consumers, that is, those who purchase goods and services for personal, family or household use.") (internal citation omitted).  Plaintiff puts forth no allegations—beyond averring in conclusory fashion that Yale's practices somehow "affected the public interest and consumers at large" (Am. Compl. ¶ 76)—to show that the consuming public has been negatively affected by

Yale's conduct. Because her Amended Complaint contains no plausible allegations that Yale's purported conduct affected consumers at large, Plaintiff's Section 349 claim is subject to dismissal.

*Third*, Plaintiff fails to allege any injury caused by Yale's purportedly deceptive conduct. "'[A] plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused *actual*, although not necessarily pecuniary, harm.'" *JD & K Assocs., LLC v. Selective Ins. Grp., Inc.*, 143 A.D.3d 1232, 1234-35, 38 N.Y.S.3d 658, 661 (N.Y. App. Div. 2016) (alteration and emphasis added) (citation omitted). As explained above, the injuries Plaintiff complains of are not actual, legally cognizable harms. *See supra* Section I. Regardless, Plaintiff makes no allegation that Yale's deceptive conduct *caused* her alleged injuries. *See Gale v. IBM*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004) (under Section 349, a plaintiff "must show that the defendant's material deceptive act caused the injury"). Indeed, Plaintiff does not allege that, had Yale not engaged in the supposedly deceptive conduct, her alleged harms would have been avoided. She instead pleads that her harms were caused by her personal information being "accessed and extracted by unauthorized users," and by "thieves" stealing money from her bank account. Am. Compl. ¶ 23. Because Plaintiff fails to allege facts showing that her purported injuries were caused by *Yale's* allegedly deceptive conduct, her Section 349 claim is subject to dismissal on this independent ground as well.

## CONCLUSION

For all these reasons, Plaintiff's Amended Complaint should be dismissed.

This 15th day of January, 2019.

Respectfully submitted,

27

DEFENDANT YALE UNIVERSITY

By: */s/ Phyllis B. Sumner*
    Phyllis B. Sumner (phv09768)
    Meghan H. Magruder (phv09767)
    Shelby S. Guilbert (phv09762)
    KING & SPALDING LLP
    1180 Peachtree Street, N.E.
    Atlanta, GA 30309
    Phone: (404) 572-4600
    Fax: (404) 572-5100
    Email: psumner@kslaw.com
    Email: mmagruder@kslaw.com
    Email: sguilbert@kslaw.com


    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0164
    Fax: (860) 880-2625
    Email: jmueller@daypitney.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JULIE MASON, on behalf of herself and all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.  3:18-cv-01280-KAD |
| | : | |
| YALE UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 15, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Phyllis B. Sumner*
   Phyllis B. Sumner (phv09768)
   KING & SPALDING LLP
   1180 Peachtree Street, N.E.
   Atlanta, GA 30309
   Phone: (404) 572-4600
   Fax: (404) 572-5100
   Email: psumner@kslaw.com

*Attorneys for Defendant Yale University*