**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JULIE MASON, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>YALE UNIVERSITY,<br><br>                  Defendant. | Civil Action No. 3:18-cv-01280-KAD |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT YALE UNIVERSITY'S MOTION TO DISMISS PLAINTIFF'S**
**AMENDED COMPLAINT[1]**

Dated:  February 8, 2019

**BURSOR & FISHER, P.A.**
Scott A. Bursor (*Pro Hac Vice* Forthcoming)
Philip L. Fraietta (phv09753)
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
        pfraietta@bursor.com

**REARDON SCANLON LLP**
James J. Reardon, Jr. (CT 13802)
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
Email:  james.reardon@reardonscanlon.com

*Attorneys for Plaintiff*

---

[1] Plaintiff does not request oral argument.

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND .............................................................................. 3

    A.    Yale Unnecessarily Stored And Maintained Class Members' "High Risk Data," Including Social Security Numbers ........................................ 3

    B.    The Yale Data Breach Compromised Class Members' Social Security Numbers And Other PII .............................................................. 4

    C.    Yale Discovered The Data Breach Ten Years Too Late .......................... 5

    D.    Plaintiff Was Vicitimzed By Yale's Failed Data Security Practices ...................... 5

LEGAL STANDARD ........................................................................................ 6

ARGUMENT ...................................................................................................... 7

I.    PLAINTIFF HAS ARTICLE III STANDING ...................................................... 7

    A.    Plaintiff Sufficiently Alleges Concrete Injuries .................................... 7

        1.    Plaintiff's Out-Of-Pocket Monetary Losses Satisfy Article III's Standing Requirement ................................................................ 8

        2.    Plaintiff's Increased Risk Of Future Identity Theft And Fraud Satisfies Article III's Standing Requirement .................................. 15

        3.    The Diminution In Value Of Plaintiff's PII Satisfies Article III's Standing Requirement ................................................................ 17

    B.    Plaintiff Sufficiently Alleges Her Concrete Injuries Are Fairly Traceable To Yale's Conduct .............................................................. 18

II.    PLAINTIFF STATES A CLAIM FOR NEGLIGENCE ...................................... 21

    A.    Plaintiff's Claims Are Not Time-Barred ............................................. 21

    B.    Defendant Owed Plaintiff A Duty Of Care To Safeguard Her Personal Identification Information ...................................................... 23

    C.    Plaintiff Alleges Defendant Was The Proximate Cause of Her Injuries ................................................................................................ 27

i

D.      Plaintiff Alleges Actual Injuries ........................................................ 28

III.    THE ABSENCE OF A PRIVATE RIGHT OF ACTION UNDER C.G.S.A
        § 36A-701B DOES NOT FORECLOSE PLAINTIFF'S CUTPA CLAIM ..................... 30

        A.      The Absence Of A Private Right Of Action Under C.G.S.A § 36a-
                701b Does Not Foreclose Plaintiff's CUTPA Claim ............................. 30

        B.      Plaintiff Has Standing For Class Action Claims Under CUTPA ......... 32

IV.     PLAINTIFF STATES A CLAIM FOR VIOLATION OF NEW YORK
        GBL § 349 ................................................................................................. 34

        A.      Defendant's Failure To Detect And Notify About The Data Breach
                Constituted A Continuous Wrong, Tolling The Statute Of
                Limitations Under New York Law ....................................................... 34

        B.      Defendant's Deceptive Conduct Occurred In New York ..................... 35

        C.      Plaintiff Sufficiently Alleges Every Element Of A GBL § 349
                Claim .................................................................................................. 37

CONCLUSION ....................................................................................................... 40

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Anderson v. Hannaford Bros. Co.*,
   659 F.3d 151 (1st Cir. 2011) ..................................................... 9

*Angersola v. Radiologic Assocs. of Middletown, P.C.*,
   193 A.3d 520 (Conn. 2018) ............................................. 2, 5, 6, 22

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010) ............................................. 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................ 6

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) .................................................. 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................ 6

*Belz v. Peerless Insurance Co.*,
   46 F. Supp. 3d 157 (D. Conn. 2014) ........................................... 32

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........................................... 12

*Boyd v. J.E. Robert Co.*,
   2010 WL 5772892 (E.D.N.Y. Mar. 31, 2010) .................................... 37

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) .......................................... 38

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) ................................................... 18

*Castillo v. Seagate Tech., LLC*,
   2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .............................. passim

*Chiste v. Hotels.com L.P.*,
   756 F. Supp. 2d 382 (S.D.N.Y. 2010) .......................................... 36

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...................................................... 8, 9, 10

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) ............................................... 36, 37

*Daly v. Metropolitan Life Insurance Co.*,
   782 N.Y.S.2d 530 (N.Y. Sup. Ct. 2004) .................................................................. 26

*Dieffenbach v. Barnes & Noble, Inc.*,
   887 F.3d 826 (7th Cir. 2018) ................................................................................. 12

*Dodd v. Commercial Union Ins. Co.*,
   365 N.E.2d 802 (Mass. 1977) ................................................................................ 31

*Doe v. Quest Diagnositcs, Inc.*,
   2017 WL 1102663 (S.D.N.Y. Mar. 23, 2017) ........................................................ 21

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) .................................................. 14, 26

*Efstathiadis v. Holder*,
   119 A.3d 522 (Conn. 2015) ................................................................................... 31

*Fenn v. Yale Univ.*,
   283 F. Supp. 2d 615 (D. Conn. 2003) .................................................................. 23

*Fero v. Excellus Health Plain, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) ........................................................... passim

*Fero v. Excellus Health Plan, Inc.*,
   304 F. Supp. 3d 333 (W.D.N.Y. 2018) ....................................................... 2, 10, 16

*First Choice Fed. Credit Union v. Wendy's Co.*,
   2017 WL 9487086 (W.D. Pa. 2017) ...................................................................... 24

*Flannery v. Singer Asset Finance Co.*,
   94 A.3d 553 (Conn. 2014) .................................................................................... 23

*Galaria v. Nationwide Mutual Ins. Co.*,
   663 F. App'x 384 (6th Cir. 2016) ................................................... 11, 16, 17, 20

*Garner v. Healy*,
   184 F.R.D. 598 (N.D. Ill. Jan. 5, 1999) ............................................................... 33

*Garron v. Bristol House, Inc.*,
   162 A.D.3d 857 (N.Y. App. Div. 2d Dep't 2018) ................................................. 35

*Gilbert v. Beaver Dam Ass'n of Stratford Inc.*,
   858 A.2d 860 (Conn. App. Ct. 2004) .................................................................... 14

*Giunta v. Dingman*,
   893 F.3d 73 (2d Cir. 2018) ...................................................................................... 6

*Gomez-Jimenez v. New York Law School,*
   103 A.D.3d 13 (N.Y. App. Div. 1st Dep't 2012)....................................... 37

*Gorss Motels, Inc. v. AT & T Mobility LLC,*
   299 F. Supp. 3d 389 (D. Conn. 2018) ..................................................... 14

*Greidinger v. Davis,*
   988 F.2d 1344 (4th Cir.1993) ................................................................. 17

*Grenier v. Comm'r of Transportation,*
   51 A.3d 367 (Conn. 2012) ...................................................................... 27

*Haas v. Haas,*
   48 A.3d 713 (Conn. App. Ct. 2012)........................................................ 23

*Habitat Educ. Ctr. v. U.S. Forest Serv.,*
   607 F.3d 453 (7th Cir. 2010) .................................................................. 12

*Hammond v. Bank of N.Y. Mellon Corp.,*
   2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................ 21

*Harvey v. Metro. Life Ins. Co.,*
   34 A.D.3d 364 (N.Y. App. Div. 1st Dep't 2006)..................................... 34

*Hayes v. Morris & Co.,*
   119 A. 901 (Conn. 1923) ........................................................................ 14

*Hedges v. Obama,*
   724 F.3d 170 (2d Cir. 2013).................................................................... 10

*In re Anthem, Inc. Data Breach Litig.,*
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................... 39

*In re Anthem, Inc. Data Breach Litig.,*
   2016 WL 3029783 (N.D. Cal. May 27, 2016) ........................................ 14

*In re Arby's Rest. Grp. Inc. Litig.,*
   2018 WL 2128441 (N.D. Ga. Mar. 5, 2018)..................................... 12, 24

*In re Barnes & Noble Pin Pad Litig.,*
   2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) .......................................... 13

*In re Experian Data Breach Litig.,*
   2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) .................................. 24, 39

*In re Gen. Motors LLC Ignition Switch Litig.,*
   339 F. Supp. 3d 262 (S.D.N.Y. 2018)............................................... 14, 39

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................... 26

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) ............................................ passim

*In re Trilegiant Corp.*,
   11 F. Supp. 3d 82 (D. Conn. 2014) ......................................................... 7

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) .............................................................. 20

*Irwin v. RBS Worldpay, Inc.*,
   2010 WL 11570892 (N.D. Ga. Feb. 5, 2010) ....................................... 24

*John v. Whole Foods Mkt. Grp.*,
   858 F.3d 732 (2d Cir. 2017) .................................................................... 7

*Jones v. Commerce Bancorp, Inc.*,
   2006 WL 1409492 (S.D.N.Y. May 23, 2006) ....................................... 26

*Kelsey v. Commissioner of Correction*,
   189 A.3d 578 (Conn. 2018) ................................................................... 32

*Lander v. Hartford Life & Annuity Insurance Co.*,
   251 F.3d 101 (2d Cir. 2001) .................................................................. 31

*Lemelledo v. Beneficial Management Corp. of Am.*,
   696 A.2d 546 (N.J. 1997) ...................................................................... 31

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   819 F.3d 963 (7th Cir. 2016) ....................................... 10, 11, 14, 16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 8, 18

*McCulloch v. Hartford Life & Accident Insurance Co.*,
   363 F. Supp. 2d 169 (D. Conn. 2005) ................................................... 32

*Mead v. Burns*,
   509 A.2d 11 (Conn. 1986) ............................................................ 31, 32

*Medcalf v. Washington Heights Condo. Ass'n Inc.*,
   747 A.2d 532 (Conn. App. Ct. 2000) .................................................... 27

*Meyerson v. Prime Realty Servs., LLC*,
   7 Misc. 3d 911 (N.Y. Sup. Ct. 2005) .............................................. 17, 40

*Morales v. Kavulich & Assocs, P.C.*,
  294 F. Supp. 3d 193 (S.D.N.Y. 2018) .................................................................. 38

*Mount v. PulsePoint, Inc.*,
  2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ...................................................... 40

*Neufeld v. Neufeld*,
  910 F. Supp. 977 (S.D.N.Y. 1996) ....................................................................... 34

*New York." Goshen v. Mutual Life Insurance Co.*,
  of New York, 98 N.Y.2d 314 (2002) ..................................................................... 36

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) .................................................................................. 37

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) .................................................................................... 7

*Provost v. Aptos, Inc.*,
  2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ....................................................... 13

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) ................................................................... 38

*Remijas v. Neiman Marcus Grp.*,
  794 F.3d 688 (7th Cir. 2015) ............................................................ 10, 14, 16, 19

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) ..................................................................... 11, 20

*Ring v. AXA Fin., Inc.*,
  2008 WL 692564 (N.Y. Sup. Ct. Feb. 6, 2008) .................................................... 34

*Ryan Transp., Inc. v. M & G Assocs.*,
  832 A.2d 1180 (Conn. 2003) ................................................................................. 23

*Sackin v. TransPerfect Glob., Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ....................................................... 10, 16, 26

*Sanborn v. Greenwald*,
  664 A.2d 803 (Conn. App. Ct. 1995) ..................................................................... 23

*Sharpe v. Puritan's Pride, Inc.*,
  2019 WL 188658 (N.D. Cal. Jan. 14, 2019) .......................................................... 36

*Shelton v. Elite Model Mgmt., Inc.*,
  812 N.Y.S.2d 745 (N.Y. Sup. Ct. 2005) ................................................................ 34

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976) ........................................................................................................ 18

*Smith v. Triad of Alabama, LLC*,
    2015 WL 5793318 (M.D. Ala. Sept. 29, 2015) ........................................................ 12

*Spokeo v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................................ 7, 17, 18

*Stacy v. HRB Tax Grp., Inc.*,
    516 F. App'x 588 (6th Cir. 2013) ............................................................................. 26

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...................................................................................................... 17

*Sullivan v. Keyspan Corp.*,
    155 A.D.3d 804 (N.Y. App. Div. 2d Dep't 2018) .................................................... 35

*Thomas v. FTS USA, LLC*,
    2016 WL 3653878 (E.D. Va. June 30, 2016) ........................................................... 18

*Torres v. Wendy's Int'l, LLC*,
    2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) ..................................................... 9, 13

*Vanliner Ins. Co. v. Fay*,
    907 A.2d 1220 (Conn. App. Ct. 2006) ..................................................................... 22

*Whalen v. Michael Stores Inc.*,
    153 F. Supp. 3d 577 (E.D.N.Y. 2015) ................................................................ 13, 15

*Whalen v. Michaels Stores, Inc.*,
    689 F. App'x 89 (2d Cir. 2017) ...................................................................... 2, 14, 15

*Williams v. Hartford*,
    2019 WL 79427 (D. Conn. Jan. 2, 2019) ................................................................... 6

*Witriol v. LexisNexis Grp.*,
    2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ......................................................... 26

*WVG v. Pacific Ins. Co.*,
    707 F. Supp. 70 (D.N.H. 1986) ................................................................................. 31

*Yershov v. Gannet Satellite Information Network, Inc.*,
    204 F.Supp. 3d 353 (D. Mass. 2016) ........................................................................ 17

*Zatkin v. Katz*,
    11 A.2d 843 (Conn. 1940) ......................................................................................... 27

**STATUTES**

C.G.S.A. § 36a-701b ................................................................................. passim

C.G.S.A. § 38a-815 ........................................................................................ 31

C.G.S.A. § 42-110a ........................................................................................ 30

C.G.S.A. § 42-471 .......................................................................................... 25

C.G.S.A. § 52-577 .......................................................................................... 22

N.Y. Gen. Bus. Law § 349 ..................................................................... passim

**RULES**

Fed. R. App. P. 25(a)(5) ................................................................................. 17

Fed. R. Bankr. P. 9037 .................................................................................. 17

Fed. R. Civ. P. 5.2 ......................................................................................... 17

Fed. R. Civ. P. 8 .............................................................................. 7, 28, 29

Fed. R. Civ. P. 9(b) .......................................................................................... 7

Fed. R. Crim. P. 49.1 ..................................................................................... 17

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .... 17

## INTRODUCTION

On the first page of its motion to dismiss Plaintiff's Amended Complaint, Defendant Yale University admits that "[a]pproximately 10 years ago, unauthorized persons improperly gained access to some personal information—including names, Social Security numbers, and certain other information—of approximately 119,000 individuals that had been stored on a Yale database at that time."  Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint , Dkt. No. 43-1 ("MTD"), at 1.  Yale also admits that it did not discover this data breach until "a security review in June 2018," ten years after the breach.  *Id.*  Yale also admits that Plaintiff Julie Mason was among the approximately 119,000 victims affected by the breach.  *Id.*  Beyond the motion to dismiss, Yale has publicly admitted that until 2011, it stored "unneeded personal information," including Social Security numbers, on its servers.[2]  And, in Plaintiff's case, Yale stored this "unneeded personal information," for over 10 years despite that Plaintiff never enrolled at Yale University.  First Amended Class Action Complaint, Dkt. No. 40 ("FAC") ¶ 14.  To date, Yale has still not notified all of the affected victims about the data breach.  *Id.* ¶ 5.[3]

To summarize, Yale collected and stored "unneeded personal information," including Social Security numbers, on its servers for over a decade.  Yale even stored personal information of people who never enrolled at the University, like Plaintiff.  In 2008, that information was compromised in a data breach that victimized over 119,000 individuals—including Plaintiff— whose names and Social Security numbers were accessed by hackers.  Yale then failed to discover that data breach for ten years.  And even after discovering it, Yale has still not notified

---

[2] https://cybersecurity.yale.edu/data-intrusion-response (last visited Feb. 8, 2019)
[3] DATA INTRUSION RESPONSE, https://cybersecurity.yale.edu/data-intrusion-response (last visited Feb. 8, 2019) (stating that Yale has still not notified all of the affected victims).

all of the affected victims.

Yale's conduct is the textbook definition of negligence.  Yet, Yale contends that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

First, Yale argues that Plaintiff lacks Article III standing to pursue her claims.  But the Amended Complaint sets forth all of the required elements for Article III standing, including the out-of-pocket loss of money, and four other categories of injury.  Moreover, Yale's argument is directly contrary to the Second Circuit's decision in *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) ("*Whalen II*") and district court cases interpreting it.  *See, e.g.*, *Fero v. Excellus Health Plan, Inc.*, 304 F. Supp. 3d 333 (W.D.N.Y. 2018) ("*Fero II*").  Indeed, Yale goes so far as to rely on a previous decision in *Fero* that was overturned on reconsideration in light of the Second Circuit's decision in *Whalen II*.  *See Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735, 756 (W.D.N.Y. 2017), *on reconsideration sub nom. Fero v. Excellus Health Plan, Inc.*, 304 F. Supp. 3d 333 (W.D.N.Y. 2018) ("*Fero I*").

Second, Yale argues that Plaintiff's claim for negligence is time-barred by Connecticut's three-year statute of limitations.  But that argument fails to consider that Yale was negligent every single day that it failed to detect the 2008 data breach until June 2018.  And even so, the statute of limitations is tolled by Connecticut's continuing course of conduct doctrine.  Critically, the Connecticut Supreme Court has held that application of that doctrine involves factual issues that cannot be resolved on a motion to dismiss.  *See Angersola v. Radiologic Assocs. of Middletown, P.C.*, 193 A.3d 520, 535 (Conn. 2018).

Yale also argues that Plaintiff fails to state a claim for negligence.  But as detailed above, this case is the textbook definition of negligence.  Specifically:  (1) Plaintiff alleges that Yale owed Plaintiff a duty to safeguard her personal identification information, which is set forth by

statute and case law; (2) Plaintiff alleges that Yale was the proximate cause of her injuries; and (3) Plaintiff alleges actual injuries.  Nothing more is required.

Third, Yale argues that Plaintiff cannot maintain a claim under the Connecticut Unfair Trade Practices Act ("CUTPA") based on Yale's violations of C.G.S.A. § 36a-701b.  But that argument defies the well-established principle of statutory interpretation under Connecticut law that there is a presumption that nonconflicting statutes provide concurrent coverage of the same subject matter unless the Legislature expressly states othwerise.

Fourth, Yale argues that Plaintiff's claim for violation of New York General Business Law ("GBL") Section 349 is time-barred.  But, like Connecticut, New York recognizes a continuing wrong doctrine that equally applies.

Fifth and finally, Yale argues that Plaintiff fails to state a claim for GBL Section 349, but Plaintiff alleges injuries that occurred in New York, and alleges every element of a GBL Section 349 claim.

In sum, Yale's motion to dismiss is an attempt to avoid legal consequences for its unmistakable negligence.  For the following reasons, the Court should deny Yale's motion to dismiss in its entirety.

**FACTUAL BACKGROUND**

This is a class action lawsuit on behalf of Plaintiff and putative class members whose personal identifying information ("PII") was accessed and extracted as a result of the breach of a Yale University ("Yale" or "Defendant") database.  *See* FAC ¶ 1.

### A.    Yale Unnecessarily Stored And Maintained Class Members' "High Risk Data," Including Social Security Numbers

Defendant Yale is a private research university located in New Haven, Connecticut.  FAC ¶ 24.  Since at least 1996, Yale has retained and electronically stored in its databases personal

3

identifying information—including Social Security numbers, names, dates of birth, and

addresses—belonging to past and present applicants, alumni, faculty, and staff. *Id.* ¶¶ 11, 23.

Yale was obligated by statute, regulation, and contract to keep these data confidential, and was

aware of these obligations. *Id.* ¶ 8.

Yale itself classifies some of this PII—such as Social Security numbers—as "High Risk

Data" because it "could be exploited for criminal or other wrongful purposes." *Id.* ¶ 7. In fact,

recognizing the sensitivity of these data, "Yale stopped using Social Security numbers as routine

identifiers in 2005." DATA INTRUSION RESPONSE, https://cybersecurity.yale.edu/data-intrusion-

response (last visited Feb. 8, 2019). However, it continued to store "unneeded personal

information" belonging to individuals, including Social Security numbers, without their

knowledge. FAC ¶¶ 12, 14. Indeed, not until 2011 did Yale start deleting "personal information

in [its] databases as part of an effort to <u>eliminate unneeded personal information on Yale

servers</u>." *Id.* ¶ 13.

> **B.    The Yale Data Breach Compromised Class Members' Social Security
>         Numbers And Other PII**

Between April 2008 and January 2009, "intruders gained electronic access to a Yale

database." FAC ¶ 2; MTD, Ex. A. These intruders extracted personal information associated

with approximately 119,000 victims across the United States—including their names, Social

Security numbers, and, in nearly all cases, dates of birth. FAC ¶¶ 2-4. In many cases, Yale e-

mail addresses and, in some cases, physical addresses, were also extracted. *Id.* ¶ 4. None of the

victims whose PII was accessed authorized such access or extraction. *Id.* ¶ 5. While Yale stated

that the breach impacted "members of the Yale community, including alumni/ae, faculty

members, and staff members," the breach impacted a far broader range of people, including

former affiliates and applicants who never matriculated to the University. *Id.* ¶ 9.

### C.     Yale Discovered The Data Breach Ten Years Too Late

Yale discovered this data breach on or about June 16, 2018—approximately <u>one decade</u>

after it originally occurred.  FAC ¶¶ 1, 10.  Despite the breadth and severity of PII disclosures,

Yale did not issue any public statement regarding the breach until 40 days later on July 26, 2018.

*Id.* ¶ 10.  On July 26 and 27, 2018, Yale began mailing letters to victims informing them that

their PII had been accessed and extracted during the breach.  *Id.* ¶ 1.  These letters stated that

"Yale considers the protection of personal data of the utmost importance."  *Id.* ¶ 16.  Yale

recommended that the victims "contact[] the three major credit reporting agencies to request that

each place a 'security freeze' on [their] individual credit file."  *See* Declaration of Philip L.

Fraietta ("Fraietta Decl.") Ex. A at 3.  Yale also provided instructions on how to do so.  *Id.*  Yale

has still not provided notice to all of the victims affected by the breach.  *Id.* ¶ 5 & n.4.

### D.     Plaintiff Was Vicitimzed By Yale's Failed Data Security Practices

Plaintiff Julie Mason is a citizen of New York.  FAC ¶ 23.  In or around 1996, Ms.

Mason applied to a visiting student program at Yale.  *Id.*  Ms. Mason completed her application

while she was physically located in New York, mailed her application from New York, and paid

the application fee using funds from a New York bank account.  *Id.*  As part of the application

process, Yale promised, and Ms. Mason understood, that Yale would keep her personal

information—including her Social Security number, name, and date of birth—confidential and

secure.  *Id.*  Ms. Mason did not matriculate to Yale's visiting student program.  She is not and

never has been an alumna, faculty member, or staff member of the university.  *Id.*

On July 30, 2018, Ms. Mason received a letter from Yale informing her for the first time

that her PII—including her name, Social Security number, and likely her date of birth—had been

accessed and extracted from a Yale database during the 2008-09 breach.  *Id.*  Prior to receiving

this letter on July 30, Ms. Mason was unaware that Yale had retained and electronically stored

"unnecessary personal information" from her 1996 visiting student application in its databases, let alone that this information had been accessed and extracted between 2008 and 2009. *Id.*

As a result of the data breach, Ms. Mason has suffered substantial harm. For example, in or about 2009, Ms. Mason was the victim of identity theft, which resulted in her credit card accounts being compromised. *Id.* Accordingly, Ms. Mason had to expend money to send credit freeze requests to all major credit reporting agencies via certified mail. *Id.* She was never reimbursed for these reasonable mitigation expenses. *Id.* In 2014, approximately $60,000 was stolen from one of Ms. Mason's bank accounts. *Id.* The thieves were able to steal these funds by using Ms. Mason's extracted PII—including her Social Security number and name—to change the password to her online banking account over the phone. *Id.* As a result, Ms. Mason lost the time value of those monies. *Id.* She also devoted hours of her time to addressing the aftermath of the data breach. *Id.* This included, but was not limited to the time spent:  sending credit freeze requests by certified mail, making telephone calls to the three major credit reporting agencies, making telephone calls and visits to her bank to resolve the $60,000 theft, and making telephone calls and visits to the police regarding that theft. *Id.*

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Williams v. Hartford*, 2019 WL 79427, at *1 (D. Conn. Jan. 2, 2019). A plaintiff is not required to prove "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Giunta v.*

*Dingman*, 893 F.3d 73, 79 (2d Cir. 2018).  The same standard applies for a Rule 12(b)(1) motion

to dismiss.  *See Donoghue v. Bulldog Investors Gen. P'ship.*, 696 F.3d 170, 173 (2d Cir. 2012)

("In conducting *de novo* review of the denial of a Rule 12(b)(1) motion to dismiss for lack of

standing, we borrow from the familiar Rule 12(b)(6) standard, construing the complaint in

plaintiff's favor and accepting all material factual allegations contained therein.").

All of Plaintiff's claims are governed by Federal Rule of Civil Procedure 8, which only

requires "a short and plain statement," not "particularity."  *Compare*  Fed. R. Civ. P. 8(a)(2) *with*

Fed. R. Civ. P. 9(b); *see Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 437 (S.D.N.Y.

2010) ("[C]laims of negligence are governed by Rule 8(a), not Rule 9(b) of the Federal Rules of

Civil Procedure."); *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 120 (D. Conn. 2014) ("Plaintiffs []

must only comply with the pleading requirements of Rule 8(a) when not alleging fraud as the

basis for their CUTPA claim."); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511

(2d Cir. 2005) ("[A]n action under [GBL] § 349 is not subject to the pleading-with-particularity

requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of

Rule 8(a).").

## ARGUMENT

## I.   PLAINTIFF HAS ARTICLE III STANDING

Defendant contends Plaintiff lacks standing "because she fails to plausibly allege an

injury-in-fact that is fairly traceable to Yale's alleged conduct."  MTD at 6.  That is wrong for

the reasons discussed below.  Plaintiff's allegations establish Article III standing.

### A.   Plaintiff Sufficiently Alleges Concrete Injuries

To satisfy the injury-in-fact requirement, a plaintiff must allege "an invasion of a legally

protected interest that is concrete and particularized and actual or imminent, not conjectural or

hypothetical." *John v. Whole Foods Mkt. Grp.*, 858 F.3d 732, 736 (2d Cir. 2017) (*citing Spokeo*

*v. Robins*, 136 S. Ct. 1540, 1548 (2016)).  Allegations of future harm establish injury in fact as long as the future harm is "certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  At the pleading stage, this requirement is not particularly onerous and will be satisfied by "general factual allegations of injury resulting from [Defendant's] conduct."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In its motion to dismiss, Defendant identifies five distinct categories of substantial harm Plaintiff alleges in her Amended Complaint:

> (i) in 2009, she "was the victim of identity theft, which included her credit card accounts being compromised," and in 2014, she "had approximately $60,000 stolen from one of her bank accounts," and "lost the time value of those monies" (Am. Compl. ¶ 23); (ii) time spent for telephone calls and visits to the bank and police department concerning the account fraud (*id.*); (iii) "an increased, imminent risk of fraud and identity theft" (*id.* ¶ 75); (iv) costs she incurred by "having to pay money for certified mail to send credit freeze requests to all three major credit reporting agencies" (*id.* ¶ 23); and (v) "loss of value of [her] Personal information" (*id.* ¶ 75).

MTD at 6-7 (citing FAC ¶¶ 23, 75).  Defendant then argues that "[n]one of these alleged harms satisfies Article III's requirement of injury in fact."  *Id.* at 7.  That is wrong.  In fact, each of these claims provides an independent basis for Plaintiff's Article III standing.

### 1.     Plaintiff's Out-Of-Pocket Monetary Losses Satisfy Article III's Standing Requirement

Defendant argues that "Plaintiff's vague allegations of credit card and bank fraud are not cognizable harms because Plaintiff does not allege she was held responsible for—and thus suffered any out-of-pocket loss from—those instances."  MTD at 7.  That is wrong.  Plaintiff has sufficiently alleged concrete injury in the form unreimbursed out-of-pocket expenses incurred mitigating identity theft and fraud resulting from the data breach, of loss in the time value of her stolen monies, and time spent mitigating those harms.  Each of these provides an independent basis for Plaintiff's Article III standing.

First, Plaintiff has pled that she suffered out-of-pocket monetary losses including the money she spent sending certified letters to the major credit monitoring agencies.  FAC ¶ 23.  Defendant argues that "any expenses that Plaintiff voluntarily incurred to guard against an alleged risk of future harm—such as the cost of certified mail to obtain credit freezes (Am. Compl. ¶ 23)—are insufficient to confer standing."  MTD at 9.  That is incorrect.  This is not a situation where Plaintiff has "manufacture[d] standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."  *Clapper*, 568 U.S. at 402.  Plaintiff did not—as Defendant suggests—incur these expenses to protect herself from "an alleged risk of future harm."  MTD at 9.  In fact, Plaintiff has alleged that she paid to send credit freezes to the major reporting agencies by certified mail because *she had already experienced unauthorized identity theft*.  FAC ¶ 23 ("[I]n or about 2009, Ms. Mason was the victim of identity theft, <u>which included her credit card accounts being compromised, and which necessitated her having to pay money for certified mail to send credit freeze requests to all three major credit reporting agencies</u>.") (emphasis added).  Courts have held that even small out-of-pocket mitigation expenses are sufficient for standing purposes.  *Torres v. Wendy's Int'l, LLC*, 2017 WL 8780453, at *2 (M.D. Fla. Mar. 21, 2017) (finding standing where one plaintiff "incurred a $3 late fee as a result of the data breach in this case"); *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 165 (1st Cir. 2011) (holding that plaintiffs' claims for damages for identity theft insurance and replacement card fees involving actual financial losses from credit and debit card misuse are recoverable as mitigation damages where customers experienced unauthorized charges).

Defendant's argument is especially ironic given that in its July 26 and 27, 2018 letters to victims of the data breach, Defendant recommended that Plaintiff and class members take the very same actions that Plaintiff took, i.e., "contacting the three major credit reporting agencies to

request that each place a 'security freeze' on your individual credit file." *See* Fraietta Decl., Ex. A at 3. Connecticut law also requires that a data breach notification "shall include information on how such resident can place a credit freeze on such resident's credit file." C.G.S.A § 36a-701b(b)(2)(B).

Defendant's reliance on *Fero I* is wholly misguided. In *Fero I*, the court only denied standing for "non-misuse" plaintiffs who had not yet experienced fraud. Others who had already suffered identity theft as the result of the data breach, like the Plaintiff here, were found to satisfy Article III's standing requirement. *Fero I*, 236 F. Supp. 3d at 754. Moreover, the court's determination that the non-misuse plaintiffs' mitigation efforts against future harm could not confer standing was premised on its finding that "the increased risk of identity theft is not imminent for these four plaintiffs." *Id.* Crucially, on reconsideration following the Second Circuit's decision in *Whalen II*, the court denied defendants' motion to dismiss the claims of the non-misuse plaintiffs. *Fero II*, 304 F. Supp. at 345; *see also infra* § I.A.2.

Other courts have also held that reasonable mitigation costs may confer standing even where a plaintiff has not yet suffered a cognizable harm, because a data breach itself is sufficient evidence of "imminent harm." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 746-47 (S.D.N.Y. 2017) ("When a future harm is sufficiently imminent to support standing, a plaintiff's expenses in taking reasonable measures to prevent the harm's fruition also may be viewed as an injury in fact . . . Here, the Complaint alleges that Plaintiffs reasonably incurred the cost of identity theft prevention services.") (citing *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013), *Clapper*, 568 U.S. at 414 n.5 (2013)); *Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 693 (7th Cir. 2015) (same); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (same). This is especially the case where a plaintiff's mitigation efforts track the Defendant's

10

own recommendations:

> [A]lthough it might not be "literally certain" that Plaintiffs' data will be misused, there is a sufficiently substantial risk of harm that incurring mitigation costs is reasonable.  Where Plaintiffs already know that they have lost control of their data, it would be unreasonable to expect Plaintiffs to wait for actual misuse—a fraudulent charge on a credit card, for example—before taking steps to ensure their own personal and financial security, ***particularly when Nationwide recommended taking these steps***. And here, the complaints allege that Plaintiffs and the other putative class members must expend time and money to monitor their credit, check their bank statements, and modify their financial accounts. Although Nationwide offered to provide some of these services for a limited time, Plaintiffs allege that the risk is continuing, and that they have also incurred costs to obtain protections—namely, credit freezes— that Nationwide recommended but did not cover. ***This is not a case where Plaintiffs seek to "manufacture standing by incurring costs in anticipation of non-imminent harm.  Rather, these costs are a concrete injury suffered to mitigate an imminent harm, and satisfy the injury requirement of Article III standing***.

*Galaria v. Nationwide Mutual Ins. Co.*, 663 F. App'x 384, 388-89 (6th Cir. 2016) (emphasis added) (internal citations omitted).

Second, Defendant's argument that "[p]laintiff pleads no facts suggesting she was held personally responsible for any fraudulent card charges or account withdrawals, and she therefore cannot establish standing based solely on the fact that such fraudulent activity may have occurred" is wrong.  MTD at 7.  There is no requirement that a plaintiff incur unreimbursed losses as the result of a data breach for Article III standing purposes.  *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966-67 (7th Cir. 2016) (finding "injuries sufficient for standing in the time and money the class members predictably spent resolving fraudulent charges (even if the bank ultimately repaid those charges) . . ."); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("[Defendant] contends that Plaintiff's injuries are not cognizable under Florida law because the Complaint alleges only 'losses' not 'unreimbursed losses.'  This is a specious

argument."); *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441, at *11 (N.D. Ga. Mar. 5, 2018) ("The Consumer Plaintiffs' allegations that they suffered monetary losses related to fraudulent charges—unauthorized charges on their accounts, theft of their personal financial information, and costs associated with detection and prevention of identity theft—are sufficient to survive a motion to dismiss."); *Smith v. Triad of Alabama, LLC*, 2015 WL 5793318, at *9 (M.D. Ala. Sept. 29, 2015) ("There is no precedent binding on this court stating that for standing purposes, a victim of identity theft must allege that he or she suffered economic damages or that he/she suffered an un-reimbursed or out-of-pocket expense, and this court will not so hold.").

Moreover, as Defendant itself notes, Plaintiff alleges that when $60,000 was stolen from one of her bank accounts, she lost "the time value of those monies."  FAC ¶ 23; MTD at 6-7. Courts have recognized that the loss of the time value of one's money is sufficient to confer Article III standing.  *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("The plaintiffs have standing . . . because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal . . ."); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (finding standing based on alleged lost use of $10,000 because "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money," creating a harm sufficient for standing); *see also Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 412 (E.D.N.Y. 2015) ("Delayed reimbursement of money borrowed from a credit-lender that may charge interest qualifies as an injury-in-fact.").

The cases Defendant cites in support of its argument that Plaintiff cannot recover based on fraudulent activity are readily distinguishable.  None of them involve breaches of Social Security numbers or injury based on the time value of stolen monies.  In *Whalen I*, the plaintiff alleged only that her credit card was "physically presented for payment" and did "not allege that

the attempted charges were approved." *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 579 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017) ("*Whalen I*"). By contrast, in this case, Plaintiff alleges both that her credit card accounts were "compromised" and that she had $60,000 stolen from a bank account. FAC ¶ 23. *Contra In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *6 (N.D. Ill. Sept. 3, 2013) ("Winstead has not pled that actual injury resulted and that she suffered any monetary loss due to the fraudulent charge."). In fact, in *Provost*, the court held that while the plaintiff lacked standing because she had not actually been the victim of any fraud or identity theft, "an allegation that a plaintiff has been a victim of identity theft <u>and</u> has suffered monetary damages as a result constitutes injury-in-fact under the law." *Provost v. Aptos, Inc.*, 2018 WL 1465766, at *3 (N.D. Ga. Mar. 12, 2018) (emphasis in original). Moreover, while the *Torres* court initially found two reimbursed credit card charges insufficient to confer standing, it subsequently held the Amended Complaint satisfied Article III standing when plaintiffs alleged, *inter alia*, they had "suffered actual injuries, including the loss of credit card reward points and loss of cash-back rewards." *Torres*, 2017 WL 8780453, at *2. That harm is far less tangible than the monetary losses Plaintiff alleges here. Accordingly, she has satisfied Article III standing requirements.

<u>Finally</u>, courts around the country have recognized that the time a plaintiff expends mitigating damages related to a data breach of her PII may satisfy Article III's injury-in-fact requirement. Contrary to Defendant's assertions, Plaintiff has in fact pled specifics about the time and effort she spent addressing the aftermath of the data breach. MTD at 8. Plaintiff alleges this included "time spent sending credit freeze requests by certified mail, telephone calls to the three major credit reporting agencies, telephone calls and visits to the bank regarding the $60,000 theft, and telephone calls and visits to the police department regarding the $60,000

13

Case 3:18-cv-01280-KAD   Document 44   Filed 02/08/19   Page 24 of 51

theft."  FAC ¶ 23.  *C.f. Whalen II*, 689 F. App'x at 90–91 (plaintiff's "complaint alleges only that 'consumers must expend considerable time' on credit monitoring, and that she 'and the Class suffered additional damages based on the opportunity cost and value of time that [she] and the Class have been forced to expend to monitor their financial and bank accounts.'").  And in *Remijas* and *Lewert*—decisions the Second Circuit cited favorably in *Whalen II*—the Seventh Circuit found that time spent dealing with the fallout of a data breach constituted an injury-in-fact.  *Remijas*, 794 F.3d at 694; *Lewert*, 819 F.3d at 967.  Courts in other circuits have agreed.  *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *26 (N.D. Cal. May 27, 2016); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *6 (S.D. Cal. Nov. 3, 2016).  And courts in this District have allowed the waste of a Plaintiff's employee's time sufficient for standing.  *Gorss Motels, Inc. v. AT & T Mobility LLC*, 299 F. Supp. 3d 389, 394 (D. Conn. 2018) ("Plaintiff alleges Defendant's unsolicited faxes caused loss of toner consumed in the printing of Defendant's fax; use of its telephone lines and fax machine; the waste of its employees' time spent receiving, reviewing, and routing the unauthorized fax; and interference with Plaintiff's privacy interest in being left alone.").

Defendant cites a single district court decision indicating that "lost time is not a compensable injury under Connecticut law unless it represents lost income or earnings."  MTD at 8; *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 311 (S.D.N.Y. 2018).  But the case law upon which the *In re Gen. Motors* court based that finding merely states that lost income and earnings are one way to calculate the value of lost time.  *See e.g.*, *Hayes v. Morris & Co.*, 119 A. 901, 902 (Conn. 1923) ("Under our law the essential question is what is the pecuniary value of time lost in consequence of the injury; the salary or wages earned at the time of the injury are [ ] evidential facts relevant to that inquiry."); *see also Gilbert v. Beaver*

14

*Dam Ass'n of Stratford Inc.*, 858 A.2d 860, 867 (Conn. App. Ct. 2004) ("Pecuniary injuries are such as can be, and usually are, without difficulty estimated by a money standard. Loss of real or personal property, or of its use, loss of time, and loss of services, are examples of this class of injuries.").  No Connecticut court has expressly limited recovery for lost time to lost earnings. Accordingly, Plaintiff's allegations regarding the time she spent dealing with the aftermath of Yale's data breach are sufficient grounds for standing.

> ### 2.      Plaintiff's Increased Risk Of Future Identity Theft And Fraud Satisfies Article III's Standing Requirement

Plaintiff's allegation that Defendant's unlawful disclosures of personal information— including Social Security numbers—put her and other class members at "an increased, imminent risk of fraud and identity theft," satisfies the injury-in-fact requirement of Article III standing. FAC ¶ 23.  The Second Circuit's decision in *Whalen II* is instructive.

*Whalen II* arose out of a data breach of Michael's craft stote involving customers' credit and debit card information.  689 F. App'x at 90.  Notably, there were no allegations the hackers accessed any other customer information, such as Social Security numbers, names, dates of birth, or addresses.  *Id.*  Further, the named plaintiff "only experienced one attempted fraudulent charge" on her credit card, she did "not allege that the attempted charges were approved or that she suffered any financial loss," and "she cancelled her credit card and has not experienced any other attempted fraudulent charges."  *Whalen I*, 153 F. Supp. 3d at 579.  The Second Circuit held that the plaintiff failed to allege actual injury or a risk of future identity theft.  *Whalen II*, 689 F. App'x at 90-91.  In doing so, the Second Circuit distinguished *Whalen II* from cases where courts found standing based on either actual fraudulent activity or a risk of future identity theft after breaches involving high risk personal information such as Social Security numbers.  *Id.*

(citing *Lewert*, 819 F.3d at 966-67; *Galaria*, 663 F. App'x at 388; *Remijas*, 794 F.3d at 693).[4]

Indeed, data breach cases following *Whalen II* have held that "a risk of future identity theft is sufficient to plead an injury in fact." *Fero II*, 304 F. Supp. 3d at 340-41 ("However, had the Second Circuit decided *Whalen* before this Court issued its prior Decision and Order, this Court would have been compelled to resolve the challenge to the non-misuse Plaintiffs' standing differently. Each of the non-misuse Plaintiffs alleged that his or her personal information—including 'names, dates of birth, <u>social security numbers</u>, mailing addresses, telephone numbers, member identification, financial information, credit card numbers, and medical claims information'—had been 'compromised' in the data breach.") (emphasis added); *Sackin*, 278 F. Supp. 3d at 746 ("Here, a case-specific analysis dictates that standing exists. The Complaint alleges that Defendant divulged information—including birth dates and <u>social security numbers</u>—far more sensitive than all or a portion of a credit card number, and that the PII here was provided directly to cybercriminals, and not merely printed on a store receipt.") (emphasis added). "Until the Supreme Court or the Second Circuit definitively weighs in, in this Circuit at least, harm based on the theft of personally identifying information such as social security number or date of birth, as alleged in the [Complaint], is sufficient to establish standing." *Fero II.*, 304 F. Supp. at 345.[5] Because Plaintiff alleges that the PII extracted from Yale's database

---

[4] "*Whalen's* favorable citations to *Galaria, Remijas*, and *Lewert* suggest that the Second Circuit would follow the approach to the standing issue adopted by the Sixth and Seventh Circuits, which have both found standing based on increased risk of identity theft." *Fero II.*, 304 F. Supp. at 339. *See Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 693 (7th Cir. 2015) ("Why else would hackers break into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities."); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints.").

[5] Because Social Security numbers, names, and dates of birth can be used as authentication

included at the very least the Social Security numbers and names—information Yale itself

defines as "High Risk Data"—she has established a risk of future harm sufficient for standing

purposes.[6]

### 3.    The Diminution In Value Of Plaintiff's PII Satisfies Article III's Standing Requirement

Under *Spokeo*, "it is instructive to consider whether an alleged intangible harm has a

close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit

in English or American courts." *Spokeo*, 136 S. Ct. at 1549. This is because federal judicial

power under Article III applies to "cases and controversies of the sort traditionally amenable to,

and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102

(1998). If the interest follows from the common law, it is concrete. "[A]n individual's right to

privacy, both as to certain personal information and private locations, has long 'been regarded as

providing a basis for a lawsuit in English or American courts.'" *Yershov v. Gannet Satellite*

---

mechanisms, protecting their security and confidentiality are essential. *See Meyerson v. Prime Realty Servs., LLC*, 7 Misc. 3d 911, 912–13 (N.Y. Sup. Ct. 2005) ("Plaintiff fears disclosure of her social security number ('SSN') may make her subject to identity theft, which has been a peril recognized for over a decade (*Greidinger v. Davis,* 988 F.2d 1344, 1354 [4th Cir.1993], 'an individual's concern over his SSN's confidentiality and misuse . . . [is] compelling. For example, armed with one's SSN, an unscrupulous individual could obtain a person's welfare benefits or Social Security benefits, order new checks at a new address on that person's checking account, obtain credit cards, or even obtain the person's paycheck'). Misuse of a social security number can lead to identity theft . . ."). Accordingly, numerous federal and state statutes prevent persons from publicly disclosing someone else's high-risk data. For example, the Federal Rules of Civil Procedure, Federal Rules of Appellate Procedure, Federal Rules of Criminal Procedure, and Federal Rules of Bankruptcy Procedure all require anyone filing documents with a court to redact Social Security numbers and dates of birth. Fed. R. Civ. P. 5.2, Fed. R. App. P. 25(a)(5); Fed. R. Crim. P. 49.1; Fed. R. Bankr. P. 9037.

[6] Indeed, the cases Defendant cited did not involve an identifiable taking of any PII, let alone high-risk personal information. *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 389-90 (6th Cir. 2016) (emphasis added).("*Reilly* is not on point where, as here, Plaintiffs allege an 'identifiable taking'—the intentional theft of their data."); *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) ("plaintiffs have uncovered no evidence that the information contained on the stolen laptop has been accessed or misused").

*Information Network, Inc.*, 204 F.Supp.3d 353, 362 (D. Mass. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549)).  That is because "the right to privacy in compilations of personal information is particularly powerful because the power of compilations to affect personal privacy . . . outstrips the combined power of the bits of information contained within."  *Id.* (quoting *Thomas v. FTS USA, LLC*, 2016 WL 3653878, at *10 (E.D. Va. June 30, 2016)).  Accordingly, Plaintiff's loss of value in her personal identifying information provides grounds for standing.

### B.      Plaintiff Sufficiently Alleges Her Concrete Injuries Are Fairly Traceable To Yale's Conduct

For standing purposes, in addition to an injury in fact "there must be a causal connection between the injury and the conduct complained of."  *Lujan*, 504 U.S. at 560–61 (*citing Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976)).  "While a plaintiff's injury must be 'fairly traceable' to a defendant's actions, the causal connection element of standing 'does not create an onerous standard. . . . A defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing.'"  *Fero I*, 236 F. Supp. 3d at 756 (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55–56 (2d Cir. 2016)).

Defendant argues that "Plaintiff has also failed to plead facts showing any of her purported injuries are 'fairly traceable to the challenged conduct of [Yale]'" and "has not alleged a causal connection between the Yale data breach and any of her purported injuries sufficient to satisfy Article III's traceability requirement."  MTD at 10 (citing *Spokeo* 136 S. Ct. at 1547); *Id.* at 11.  That is false.

As an initial matter, there is no requirement that, as Defendant suggests, Plaintiff must "plead that her personal information *was not* stolen in any other data breaches."  MTD at 11 (emphasis added).  "In the data breach context, courts have rejected the argument that plaintiffs'

injuries are not fairly traceable when their information could have been compromised during a different data breach in recent years." *Fero I*, 236 F. Supp. 3d at 757; *Remijas*, 794 F.3d at 696 ("If there are multiple companies that could have exposed the plaintiffs' private information to the hackers, then the common law of torts has long shifted the burden of proof to defendants to prove that their negligent actions were not the 'but-for' cause of the plaintiff's injury.").

Moreover, Plaintiff does not, as Defendant contends, "ask the Court to simply assume that the alleged compromise of her credit cards in 2009 and bank fraud in 2014 resulted directly from the personal information affected by the Yale security incident in 2008 or 2009." MTD at 11. Plaintiff alleges, *inter alia*, that "Yale admits that the data that was accessed and extracted 'included names, Social Security numbers, and, in nearly all cases, dates of birth'" and that "Yale mailed letters informing individuals" of this breach. FAC ¶ 4, 1. At the pleading stage, evidence that a defendant admitted customers' PII had been exposed and that it had notified them their personal information was at risk are sufficient for standing purposes. *Remijas*, 794 F.3d at 696 ("[w]hether or not ... [p]laintiffs' allegations suffer from defects that prevent them from ultimately prevailing in the case, the allegations show the connection between the alleged injury and breach is more than just hypothetical or tenuous"); *Fero I*, 236 F. Supp. 3d at 757-58 (following *Remijas*); *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1159 (D. Minn. 2014) ("Plaintiffs' allegations plausibly allege that they suffered injuries that are 'fairly traceable' to Target's conduct.").

In *In re Target*, for example, plaintiffs alleged their personal financial information was compromised as a result of the breach of a Target store database. 66 F. Supp. 3d at 1154. The Target plaintiffs alleged injuries similar to those in this case, including "unlawful charges" and "restricted or blocked access to bank accounts." *Id*. at 1159; *see* FAC ¶ 23. The *Target* court

found plaintiffs' injuries fairly traceable to the data breach and that Defendant Target's arguments to the contrary "gloss[ed] over the actual allegations made and set a too-high standard for Plaintiffs to meet at the motion-to-dismiss stage." *Id.* at 1159.

Additionally, in the context of data breaches, courts have held allegations that a defendant failed to establish safeguards to protect consumers' data from criminal third parties are sufficient for standing purposes. *Fero I*, 236 F. Supp. 3d at 758 (finding standing where plaintiffs "have alleged that the Defendants failed to safeguard their personal information— including names, dates of birth, social security numbers, member identification numbers, home addresses, telephone numbers, and financial information—and, as a direct result, hackers gained access to their personal information"); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1029 (9th Cir. 2018) ("Plaintiffs sufficiently allege that the risk of future harm they face is ''fairly traceable' to the conduct being challenged'—here, Zappos's failure to prevent the breach."); *Galaria*, 663 F. App'x at 390 ("Plaintiffs allege that Defendants failed 'to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and other Class Members' [data] to protect against anticipated threats to the security or integrity of such information.' . . . [B]ut for Nationwide's allegedly lax security, the hackers would not have been able to steal Plaintiffs' data."); *Resnick*, 693 F.3d at 1324 (finding injuries from a data breach fairly traceable to a defendant that failed to secure laptops that were then stolen). Therefore, Plaintiff's allegation that "Yale breached its duties of care by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access . . ." is sufficient to confer Article III standing. FAC ¶ 47.

Defendant's reliance on *Hammond v. Bank of N.Y. Mellon Corp.* and *Doe v. Quest* is entirely misplaced and distinguishable. In *Hammond*, the court did not even reach the question

of whether the plaintiffs' injuries were fairly traceable to the defendant's conduct for standing purposes because it found plaintiffs had not suffered any injury-in-fact. *Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307 at *6-8 (S.D.N.Y. June 25, 2010). And in *Doe*, in finding that a plaintiff whose personal information was accidentally faxed to a wrong number lacked standing, the court stated "[i]nadvertently sending information to a disinterested wrong number *does not present even the degree of risk of exposing a plaintiff's private information to unknown hackers who are actually seeking the information*." *Doe v. Quest Diagnositcs, Inc.*, 2017 WL 1102663, at *4 (S.D.N.Y. Mar. 23, 2017) (emphasis added).

Third, Defendant suggests that "Plaintiff puts forth nothing—beyond conclusory allegations—to suggest how the information affected in the Yale breach (*i.e.*, her name, Social Security number, and maybe date of birth) was somehow used to carry out the alleged credit card and bank fraud." MTD at 11-12. That is wrong. Social Security numbers, names, and dates of birth serve as important authentication mechanisms. A criminal with access to this information would easily be able to, as Plaintiff has alleged, commit identity theft "by using Ms. Mason's extracted PII to change the password on her online banking account over the phone." FAC ¶ 23. And Plaintiff claims "[c]ritically, the extracted PII, which included 'unneeded personal information,' including Ms. Mason's social security number, allowed the thieves access to her bank accounts." *Id.*

Because the traceability requirement is not onerous and may be satisfied even when the injury is indirectly traceable due to the intervening conduct of another person, Plaintiff has plainly satisfied this requirement.

## II.   PLAINTIFF STATES A CLAIM FOR NEGLIGENCE

### A.   Plaintiff's Claims Are Not Time-Barred

Defendant argues that Plaintiff's negligence claim should be time-barred by the statute of

limitations under C.G.S.A. § 52-577 because it "is premised on alleged negligent conduct by Yale in 1996 when she applied to one of Yale's programs."  MTD at 13.  That is incorrect.

<u>First</u>, Plaintiff's negligence claim is based in part on Yale's failure to timely identify and provide notice of the data breach.  Plaintiff alleges that Yale, *inter alia*, "fail[ed] to maintain appropriate technological and other systems . . . to promptly notify Yale of a breach and enable Yale to determine the extent of the PII that had been compromised so that, among other things, Yale could timely provide notice to affected consumers with accurate information so that those affected could begin minimizing the impact of the incident."  FAC ¶ 47.  This breach of its duty of care continued up until the data breach was discovered on June 16, 2018, and therefore falls well within the three-year statute of limitations period.

<u>Second</u>, Yale's statute of limitations argument is premature and cannot be decided on this motion to dismiss.  Plaintiff alleges that Yale's conduct constitutes a continuing course of conduct tolling the statute of limitations under Connecticut law.  "[W]hether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact . . ." *Vanliner Ins. Co. v. Fay*, 907 A.2d 1220, 1230–32 (Conn. App. Ct. 2006).  Whether Plaintiff can prevail under the continuing course of conduct doctrine is a "critical factual dispute" that "cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts." *Angersola v. Radiologic Assocs. of Middletown, P.C.*, 193 A.3d 520, 535 (Conn. 2018).  For example, discovery may show that Yale failed to take any actions to discover the data breach.

But even if the Court considers Yale's statute of limitations argument at this juncture, it is clear that the continuing course of conduct doctrine applies.  Connecticut courts have developed a two-part test for determining whether the tolling doctrine applies:

> [A] precondition for the operation of the continuing course of
> conduct doctrine is that the defendant must have committed an
> initial wrong upon the plaintiff . . . A second requirement for the
> operation of the continuing course of conduct doctrine is that there
> must be evidence of the breach of a duty that remained in existence
> after commission of the original wrong related thereto . . . This court
> has held this requirement to be satisfied when there was wrongful
> conduct of a defendant related to the prior act.  Such later wrongful
> conduct may include acts of omission as well as affirmative acts of
> misconduct.

*Flannery v. Singer Asset Finance Co.*, 94 A.3d 553, 570 (Conn. 2014); *see Haas v. Haas*, 48 A.3d 713, 719–20 (Conn. App. Ct. 2012); *Fenn v. Yale Univ.,* 283 F. Supp. 2d 615, 638 (D. Conn. 2003).  The doctrine is generally applicable where, as here, "the situation keeps evolving after the act complained of is complete. . . ."  *Sanborn v. Greenwald,* 664 A.2d 803, *cert. denied*, 666 A.2d 1186 (Conn. App. Ct. 1995). Yale failed "to maintain appropriate technological and other systems to prevent unauthorized access, [and] to minimize the PII that any intrusion could compromise."  FAC ¶ 47.  And Defendant further breached its duty of care by failing to identify the breach and notify affected victims promptly, as discussed above.  Yale's failure continued until it provided victims with notice of the breach in July 2018.  And Yale's failure continues to today as it still has not notified all of the affected victims.  Accordingly, the continuing course of conduct doctrine applies, tolling the statute of limitations in this case.

**B.    Defendant Owed Plaintiff A Duty Of Care To Safeguard Her Personal Identification Information**

"[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case."  *Ryan Transp., Inc. v. M & G Assocs.*, 832 A.2d 1180, 1184 (Conn. 2003).

"To get past a 12(b)(6) motion to dismiss, Plaintiffs just have to sufficiently *allege* a duty, not *establish* its existence, and the complaint does sufficiently allege a duty here. Almost an entire page of the complaint lists the various alleged duties Defendants owed to Plaintiffs and the source of those duties." *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *3 (C.D. Cal. Dec. 29, 2016) (emphasis in original). Indeed, in this case, the Amended Complaint includes extensive allegations about the duties Defendant owed to Plaintiff and the Class, the source of those duties, and what those duties required Defendant to do. FAC ¶¶ 43-46; *see infra,* § II.D. That alone is sufficient to survive a motion to dismiss.

Plaintiff has also alleged facts sufficient to suggest Yale should have anticipated the deficiencies in its cybersecurity systems and procedures would allow criminal third parties to access and extract her personal information. For example, she alleges "Yale unnecessarily kept and stored in its databases 'unneeded personal information' of its applicants, alums, faculty and staff, including their Social Security numbers, names, dates of birth, and addresses" and "knew, or should have known, that storing 'unneeded personal information' on its servers put that information at risk of being accessed in a data breach." FAC ¶¶ 11, 15. "Allegations that a company knew of a foreseeable risk to its data security systems are sufficient to establish the existence of a plausible legal duty and survive a motion to dismiss." *In re Arby's*, 2018 WL 2128441, at *5; *see also First Choice Fed. Credit Union v. Wendy's Co.*, 2017 WL 9487086, at *11 (W.D. Pa. 2017); *Irwin v. RBS Worldpay, Inc.*, 2010 WL 11570892 (N.D. Ga. Feb. 5, 2010). "Such information is obviously valuable; Social Security numbers unlock various government benefits, employment opportunities, and serve as an important authentication mechanism. Items of such value will always be attractive to unscrupulous people hoping to make quick and easy money, which means attempts to capture such information are likely and foreseeable." *Castillo*

*v. Seagate Tech., LLC*, 2016 WL 9280242, at *3 (N.D. Cal. Sept. 14, 2016).  To make matters worse, the breached PII included Social Security numbers with corresponding names and "in nearly all cases," corresponding dates of birth.  FAC ¶ 4.

Defendant's argument that "[n]o court has held that there is a legal duty under Connecticut law to safeguard individuals' personal information from misuse by criminal third-parties, and there is no relevant statute upon which to premise such a duty" is false.  MTD at 14-15.[7]  In fact, the duty to safeguard personal information—including Social Security numbers—is codified in Connecticut law.  C.G.S.A. § 42-471 provides that "[a]ny person in possession of personal information of another person shall safeguard the data, computer files and documents containing the information from misuse by third parties."  But Yale did not safeguard the PII.  FAC ¶ 47.  Defendant's brief entirely ignores this statute.

Moreover, even without C.G.S.A. § 42-471, it is clear that Connecticut courts would impose a duty on Yale to safeguard personal information.  Indeed, courts around the country have found parties in possession of personal identifying information owe the owners of that data a duty of care to safeguard their sensitive information:

---

[7] Plaintiff has also sufficiently alleged that Yale had a duty to provide timely notice of the breach to herself and other affected individuals.  Yale breached this duty when it failed to identify the data breach until ten years after it had occurred and then waited an additional 40 days to provide written notice.  And Yale has continued to breach that duty as it still has not notified all of the individuals affected by the data breach.  *See Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016) ("Plaintiffs aver Seagate breached a second duty—the duty to inform them of the security breach in a reasonably timely manner so they could take steps to monitor for unauthorized use of their personal identifying information. For the reasons discussed above, when Seagate asked for and obtained the personal identifying information of its employees and their spouses, it assumed a duty to protect that information—a duty that included prompt notice of security breaches."); DATA INTRUSION RESPONSE, https://cybersecurity.yale.edu/data-intrusion-response (last visited Feb. 8, 2019) (noting that Yale has only notified "97% of the individuals affected"); FAC ¶ 5 ("As of August 1, 2018, Yale still has not notified all of the individuals affected by the data breach.").

> Such information is obviously valuable; Social Security numbers unlock various government benefits, employment opportunities, and serve as an important authentication mechanism. Items of such value will always be attractive to unscrupulous people hoping to make quick and easy money, which means attempts to capture such information are likely and foreseeable. . . . If Seagate did not take reasonable steps to protect such vital information, and such incautious security resulted in the release of information, then Seagate's conduct would be closely connected with the harm to the plaintiffs, i.e., the release of personal identifying information. In light of the sensitivity of such information, sound public policy would require those who obtain it legally should guard it with care.

*Castillo*, 2016 WL 9280242, at *3; *see also Sackin*, 278 F. Supp. 3d at 748; *Stacy v. HRB Tax Grp., Inc.*, 516 F. App'x 588, 591 (6th Cir. 2013); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *11 (S.D. Cal. Nov. 3, 2016); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014); *Witriol v. LexisNexis Grp.*, 2006 WL 4725713, at *7–8 (N.D. Cal. Feb. 10, 2006).

Plaintiff's allegations that she provided her PII to Defendant as part of her application to a visiting student program and that "[a]s part of the application process, Yale promised, and Ms. Mason understood, that Yale would keep her Personal Information confidential and secured" are sufficient to establish Yale owed her a duty to protect her personal information. *Jones v. Commerce Bancorp, Inc.*, 2006 WL 1409492, at *2 (S.D.N.Y. May 23, 2006) ("Here, plaintiff has alleged that she provided certain personal information to Commerce in order to open her account. She has also alleged that Commerce 'warranted to their customers generally, and to [plaintiff] in particular, that account information would be safeguarded and limited to authorized parties.' These allegations are sufficient to establish a duty by Commerce to protect plaintiff's personal information.") (internal citations omitted); *Daly v. Metropolitan Life Insurance Co.*, 782 N.Y.S.2d 530, 535 (N.Y. Sup. Ct. 2004) (finding that since plaintiff had been required to provide personal identifying information to Met Life in order to obtain life insurance, and Met Life had

26

represented that it would safeguard that information, "Met Life had a duty to protect the [plaintiff's] confidential personal information . . .").

Finally, the fact that Yale collected Plaintiff's PII "voluntarily" does nothing to limit Yale's duty to safeguard her personal information, and Defendant misstates the law on this point. *Grenier v. Comm'r of Transportation*, 51 A.3d 367, 383 (Conn. 2012) ("If one undertakes to perform an act and performs it negligently . . . it makes no difference whether . . . the act was performed gratuitously." (quoting *Zatkin v. Katz,* 11 A.2d 843 (Conn. 1940)).  And explicit promises as to the ongoing protection of personal information are not required to assert a claim for negligence.  *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016) ("While Seagate made no explicit promises as to the ongoing protection of personal information, it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently."); *In re Target*, 66 F. Supp. 3d at 1176 (holding the plaintiffs had sufficiently pleaded "an implied contract in which Plaintiffs agreed to use their credit or debit cards to purchase goods at Target and Target agreed to safeguard Plaintiffs' personal and financial information.").

### C.   Plaintiff Alleges Defendant Was The Proximate Cause of Her Injuries

The harms Plaintiff alleges are not "too far down the causal continuum to warrant imposing liability on Yale."  MTD at 17.  As an initial matter, it is inappropriate to consider causation at the pleading stage here because it remains a question of fact.  *See Medcalf v. Washington Heights Condo. Ass'n Inc.*, 747 A.2d 532, 535-36 (Conn. App. Ct. 2000).  Even so, Plaintiff has pled facts that plausibly connect Yale's conduct to the harms she suffered.  Plaintiff alleges that she was a victim of identity theft in 2009 and Yale admits that the data breach occurred between April 2008 and January 2009.  FAC ¶¶ 23, 2.  And, as discussed *supra*,

27

Defendant's failure to take reasonable steps to protect Plaintiff's PII allowed criminals to access and extract her sensitive information from Yale's database. *Castillo*, 2016 WL 9280242, at *3 ("If Seagate did not take reasonable steps to protect such vital information, and such incautious security resulted in the release of information, then Seagate's conduct would be closely connected with the harm to the plaintiffs, i.e., the release of personal identifying information.").

### D. Plaintiff Alleges Actual Injuries

As discussed above, the harms Plaintiff alleges satisfy Article III's injury-in-fact requirements. And they constitute actual injuries supporting a negligence claim for many of the same reasons. *See supra*, § I.A. Plaintiff claims Yale's negligence caused injuries including out-of-pocket costs connected with sending credit freeze requests to all three major credit reporting agencies and the loss of the time value of the $60,000 stolen from her bank account. FAC ¶ 23. These out-of-pocket expenses clearly constitute actual injuries. *Castillo*, 2016 WL 9280242, at *4 ("Those who have incurred such out-of-pocket expenses have pleaded cognizable injuries."). Plaintiff's allegations regarding unauthorized withdrawalsmade from her bank account also constitute actual injuries. *Lewert*, No. 14–04787 (N.D. Ill. June 25, 2014) FAC (Dkt. No. 1) ¶ 33 (alleging "monetary losses arising from unauthorized bank account withdrawals").

In addition, Plaintiff has stated cognizable injury resulting from Yale's failure to timely identify the breach and provide adequate and prompt notice. Compl ¶ 47. *See supra*, n.5; *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1171 (D. Minn. 2014). ("Although Target would like a more detailed explanation of what damages were caused by the delayed breach notification, the allegations in the Complaint are not fatally insufficient. Rather, those allegations are a 'short and plain statement,' Fed.R.Civ.P. 8(a)(2), that plausibly alleges that Plaintiffs suffered damage as a result of the delay. Plaintiffs' negligence claim will not be dismissed on this basis.").

Although the pleading standard for Plaintiff's negligence claim is govered by Rule 8, Plaintiff provides detailed allegations to support her negligence claim that satisfy the proverbial "who, what, when, where, and how:"

**Who:**     The Amended Complaint specifically identifies Yale as the entity that "owed Plaintiff and the Class members a duty of care commensurate with the sensitive nature of the PII with which it was entrusted."  FAC ¶ 43.

**What:**    Plaintiff alleges that "Yale's duty required it, among other things, to design and employ cybersecurity systems, anti-hacking technologies, and intrusion detection and reporting systems sufficient to protect the PII from unauthorized access and to promptly alert Yale to any such access and enable it to determine the extent of any compromised PII."  *Id.* ¶ 45.  She also alleges that "Yale stored 'unneeded personal information' on its servers."  *Id.* ¶ 14.

**When:**    Plaintiff alleges she provided her personal identifying information to Yale on or about 1996.  *Id.* ¶ 23.  In "Plaintiff's case, Yale stored this 'unneeded personal information,' for over 10 years despite the fact that Plaintiff never enrolled at Yale University."  *Id.* ¶ 14.  Plaintiff further alleges that a breach of a Yale database occurred between April 2008 and January 2009, that Yale discovered this breach on or about June 16, 2018, and that it began notifying individuals about the breach on July 26 and 27, 2018.  *Id.* ¶¶ 2, 10, 1.

**Where:**   Plaintiff alleges that she is a New York citizen.  *Id*. ¶ 23.  She completed her application to Yale "while she was physically located in New York," mailed her application from New York, and paid the application fee "with funds from a New York bank account."  *Id*.  Plaintiff also alleges that Yale is located in Connecticut.  *Id*. ¶ 24.

| How: | The Amended Complaint alleges that Yale breached its duties of care by "failing to maintain appropriate technological and other systems to prevent unauthorized access, to minimize the PII that any intrusion could compromise . . . and to promptly notify Yale of a breach . . . so that Yale could timely provide notice to affected consumers." *Id.* ¶ 47.  Plaintiff further alleges that Defendant's breach of its duties of care allowed third parties to "access, obtain, and misuse the PII of Plaintiff and the members of the Classes," and that its breach "directly and proximately injured Plaintiff and members of the Classes." *Id.* ¶¶ 48-49.  Plaintiff also alleges that Yale failed to timely detect and notify her of the breach.  *Id.* ¶¶ 46, 55. |
|---|---|

## III.   THE ABSENCE OF A PRIVATE RIGHT OF ACTION UNDER C.G.S.A § 36A-701B DOES NOT FORECLOSE PLAINTIFF'S CUTPA CLAIM

Defendant argues that the absence of a private right of action under Connecticut's data breach statute, C.G.S.A. § 36a-701b, precludes Plaintiff from asserting a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S.A. § 42-110a, *et seq*.  MTD at 19-20. Defendant further argues that even if Plaintiff could pursue a private action, she fails to state a claim because she lacks standing, and Defendant complied with the requirements of § 36a-701b. These arguments are wrong.

### A.   The Absence Of A Private Right Of Action Under C.G.S.A § 36a-701b Does Not Foreclose Plaintiff's CUTPA Claim

CUTPA provides that "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" and allows for a private right of action.  C.G.S.A. § 42-110b(a).  C.G.S.A. § 36a-701b(2)(g) states, "Failure to comply with the requirements of this section shall constitute an unfair trade practice for purposes of [CUTPA] and shall be enforced by the Attorney General."

Common principles of statutory interpretation dictate that "the mere existence of one regulatory statute does not affect the applicability of a broader, nonconflicting statute, particularly when both statutes provide for concurrent coverage of their common subject matter." *Mead v. Burns*, 509 A.2d 11, 18 (Conn. 1986); *WVG v. Pacific Ins. Co.*, 707 F. Supp. 70, 73 (D.N.H. 1986) (same); *Dodd v. Commercial Union Ins. Co.*, 365 N.E.2d 802, 805 (Mass. 1977) (same); *Lemelledo v. Beneficial Management Corp. of Am.*, 696 A.2d 546, 554 (N.J. 1997) ("It is not readily to be inferred that the Legislature, by enacting multiple remedial statutes designed to augment protection, actually intended that parties be subject only to one source of regulation."). Moreover, "when more than one statutory provision is involved, we presume that the legislature intended those provisions to be read together to create a harmonious body of law . . . and we construe the provisions, if possible, to avoid conflict between them." *Efstathiadis v. Holder*, 119 A.3d 522, 528 (Conn. 2015). Accordingly, because the Legislature did not expressly foreclose a private right of action under the CUTPA, C.G.S.A. § 36a-701b should not be interpreted to foreclose Plaintiff's right to bring a private action under the broader CUTPA.

Connecticut courts have also upheld an individual's right to bring an action under CUTPA based on violations of other underlying statutes that do not themselves include private rights of action. For example, C.G.S.A § 38a-815 ("CUIPA"), which bars unfair insurance trade practices, states that "[t]he [insurance] commissioner shall have power to examine the affairs of every person engaged in the business of insurance . . . in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice . . ." Based on this language, "most federal and Connecticut state courts have determined that [CUIPA]…does not provide a private cause of action." *Lander v. Hartford Life & Annuity Insurance Co.*, 251 F.3d 101, 118 (2d Cir. 2001). Nonetheless, "the Connecticut

Supreme Court has allowed plaintiffs to use CUTPA as a vehicle to bring a claim for unfair settlement practices under CUIPA." *McCulloch v. Hartford Life & Accident Insurance Co.*, 363 F. Supp. 2d 169, 181 (D. Conn. 2005); *Mead*, 509 A.2d at 18 ("We now expressly hold . . . that the legislature has manifested an intention to make insurance practices the subject of two regulatory statutes, CUIPA and CUTPA."); *Belz v. Peerless Insurance Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014) ("A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision."). Accordingly, it is in line with Connecticut precedent to allow a private cause of action based on a substantive violation of § 36a-701b to be asserted through CUTPA.

Moreover, under the omitted-case canon, *casus omissus pro omisso habendus est*, "what a text does not provide is unprovided." *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 96 (2012); *Kelsey v. Commissioner of Correction*, 189 A.3d 578, 584 (Conn. 2018) ("We are not permitted to supply statutory language that the legislature may have chosen to omit."). The text of C.G.S.A. § 36a-701b(2)(g) provides that a violation of the statute constitutes a *prima facie* violation of CUTPA and nothing more. Nothing in the statutory language indicates a substantive violation of the statute may not be enforced through a private right of action under CUTPA, and it is impermissible to read such a limitation into the law.

**B.      Plaintiff Has Standing For Class Action Claims Under CUTPA**

Defendant's contention that Plaintiff lacks standing to pursue her CUTPA claim as a class action because she is not a Connecticut resident and "she does *not* allege that she was injured in Connecticut" is specious. MTD at 20 n.7 (emphasis in original). By Defendant's own admission, "most of the alleged conduct Plaintiff identifies occurred in Connecticut, where Yale is located." MTD at 23. Although Plaintiff does allege certain injuries that occurred in New

York, as discussed *infra,* § IV.B, the underlying violation of C.G.S.A. § 36a-701b(2)(g) that is the basis of Plaintiff's CUTPA claim—Yale's failure to timely notify Plaintiff and other putative Class members of the data breach—plainly occurred in Connecticut.  Moreover, Plaintiff does not need to be a Connecticut resident in order to maintain class action claims under CUTPA. *See, e.g.*, *Garner v. Healy*, 184 F.R.D. 598, 604 & n.7 (N.D. Ill. Jan. 5, 1999) (certifying class action under CUTPA brought by a non-Connecticut resident).

### C.       Plaintiff States A Claim Under C.G.S.A. § 36a-701b

Finally, Plaintiff has sufficiently stated a claim for Defendant's underlying violation of C.G.S.A § 36a-701b.  C.G.S.A. § 36a-701b(c) requires Defendant to notify the "owner or licensee of the information of any breach of security immediately following its discovery, if the personal information of a resident of this state was breached or is reasonably believed to have been breached."  Defendant admits that "the breach impacted members of the Yale community, including alumni/ae, faculty members, and staff members."  FAC ¶ 9.  Because faculty and staff members are residents of Connecticut, Defendant was required to notify *all* "owners" of PII "immediately following" discovery of the breach.  "Immediately" means "without lapse of time; without delay; instantly; at once."  DICTIONARY.COM, "Immediately", *available at* https://www.dictionary.com/browse/immediately.  As stated above, Defendant had been aware of the breach since at least June 16, 2018.  FAC ¶ 10.  Yet, Defendant did not notify any owners of affected PII about the breach until 40 days later on July 26, 2018.  FAC ¶ 10.  This does not constitute notification "without lapse of time" or "without delay."  In fact, given the sensitive nature of the information divulged and the fact that Yale failed to discover the breach until ten years after it had occurred, this constitutes considerable delay.  Thus, Plaintiff has sufficiently alleged a violation of C.G.S.A. § 36a-701b(c).

As to C.G.S.A. § 36a-701b(b)(1), Defendant argues that Plaintiff has failed to state a claim because it notified her six weeks after discovering the breach.  MTD at 20. Notwithstanding the fact that Plaintiff has stated a claim under C.G.S.A. § 36a-701b(c), this argument is wrong.  C.G.S.A. § 36a-701b(b)(1)'s notice requirement only applies to Connecticut residents; it says nothing about when or how out-of-state residents, such as Plaintiff, must be notified.  C.G.S.A. § 36a-701b(b)(1) ("Any person who conducts business in this state. . . shall provide notice of any breach of security . . . to any resident of this state . . . without unreasonable delay but not later than ninety days . . . ").  Regardless, Plaintiff plausibly alleges Defendant has not complied with the ninety-day notice requirement for in-state residents because it has, at this time, at best only notified "97% of the individuals affected."  DATA INTRUSION RESPONSE, https://cybersecurity.yale.edu/data-intrusion-response (last visited Feb. 8, 2019); FAC ¶ 5 ("As of August 1, 2018, Yale still has not notified all of the individuals affected by the data breach.").

## IV.   PLAINTIFF STATES A CLAIM FOR VIOLATION OF NEW YORK GBL § 349

### A.   Defendant's Failure To Detect And Notify About The Data Breach Constituted A Continuous Wrong, Tolling The Statute Of Limitations Under New York Law

Defendant argues that Plaintiff's GBL § 349 claim is barred by the three-year statute of limitations.  MTD at 21.  This is wrong.  Defendant's continuous, negligent failure to discover the breach extended the statute of limitations for Plaintiff's claim.

Under New York law, "certain wrongs are considered to be continuous wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act."  *Neufeld v. Neufeld*, 910 F. Supp. 977, 982 (S.D.N.Y. 1996).  A number of New York courts have applied the continuous wrong doctrine to GBL § 349 claims.  *See Harvey v. Metro. Life Ins. Co.*, 34 A.D.3d 364, 364 (N.Y. App. Div. 1st Dep't 2006); *Ring v. AXA Fin., Inc.*, 2008 WL 692564, at *3 (N.Y. Sup. Ct. Feb. 6, 2008); *Shelton v. Elite Model Mgmt., Inc.*, 812 N.Y.S.2d 745, 757

34

(N.Y. Sup. Ct. 2005).

Plaintiff has sufficiently pled the existence of a continuous wrong.  New York's continuous wrong doctrine is similar to Connecticut's.  "The continuing wrong doctrine is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act."  *Garron v. Bristol House, Inc.*, 162 A.D.3d 857, 858-59 (N.Y. App. Div. 2d Dep't 2018).  As with Connecticut, the applicability of the continuing wrong doctrine is an issue of fact, which is inappropriate for resolution of a motion to dismiss.  *See id.* (reversing trial court's grant of motion to dismiss where "the plaintiff raised a question of fact as to whether the continuing wrong doctrine rendered a portion of the subject causes of action timely"); *see also Sullivan v. Keyspan Corp.*, 155 A.D.3d 804, 807 (N.Y. App. Div. 2d Dep't 2018) (reversing trial court's grant of a motion for summary judgment where "[t]he appellants raised a triable issue of fact as to whether the continuing harm exception applies").  Nonetheless, as stated in Argument § II.A, *supra*, the continuing wrong doctrine applies.  Plaintiff alleges Defendant made misrepresentations and omissions regarding its ability to protect her PII and its compliance with common law and statutory duties pertaining to the security of her PII.  FAC ¶¶ 72(d)-(g).  And Yale made these material misrepresentations and omissions every day for more than twenty years—up until it notified Plaintiff and others of the breach on July 26, 2018.  Thus, Plaintiff has met the standard for the continuous wrong doctrine, extending the statute of limitations for her GBL § 349 claim until Defendant notified victims of the breach.

### B.  Defendant's Deceptive Conduct Occurred In New York

Defendant also argues that even if Plaintiff's § 349 claim is timely, it still must fail because Plaintiff has not pled that any deceptive conduct occurred in New York.  MTD at 22-24. This is also wrong.

35

For a breach of GBL § 349 to occur, "the deception of a consumer must occur in New York." *Goshen v. Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314, 325 (2002); N.Y. Gen. Bus. Law § 349(a).  However, a number of cases interpret "in New York" to mean "where the deception of the plaintiff occurs and require, for example, that a plaintiff actually view a deceptive statement while in New York."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (explaining the location-based approach to GBL § 349); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (holding defendants' deceptive practices occurred in the states in which each named plaintiff used the Internet to access defendants' websites, and allowing the claim of a plaintiff who had viewed defendants' websites in New York to proceed), *Sharpe v. Puritan's Pride, Inc.*, 2019 WL 188658, at *3 (N.D. Cal. Jan. 14, 2019) ("*Goshen* stands for the proposition that 'the actual misrepresentation or omission to a consumer' occurs in the place where the consumer accesses and acts upon the deception.").

Applying this standard to the present case, Defendant's deceptive practices occurred in New York.  Plaintiff alleges that she is a citizen of New York.  FAC ¶ 23.  Plaintiff further alleges she filled out her visiting students program application in New York, mailed out her application from New York, paid money for the application from a New York bank account, and was <u>promised in New York that her data would be safeguarded</u>. *Id.* ¶ 23 (emphasis added). Accordingly, Plaintiff has sufficiently alleged that Defendant's deceptive acts took place in New York.

Furthermore, the "transactional" based approach to § 349 Defendant endorses does not foreclose Plaintiff's claim.  The "transactional" line of cases "focus on where the underlying deceptive 'transaction' takes place, regardless of the plaintiff's location or where the plaintiff is deceived." *Cruz*, 720 F.3d at 123.  However, "we do not foreclose the possibility that the

location of the deception may also serve to confer statutory standing under [§ 349]." *Cruz*, 720

F.3d at 123 n.4.  The two approaches to § 349's "in this state" requirement are not mutually

exclusive, and the transactional approach does not exclude Plaintiff from pleading standing

under the location approach.

### C.    Plaintiff Sufficiently Alleges Every Element Of A GBL § 349 Claim

Finally, Defendant argues Plaintiff has failed to "plead the necessary elements of a [GBL

§ 349] claim."  MTD at 24.  This is wrong.  To plead a *prima facie* case for a GBL § 349 claim,

"a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2)

materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive

act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).  Plaintiff has

sufficiently pled every element of her GBL § 349 claim.

<u>First</u>, Plaintiff has alleged Defendant's conduct is consumer-oriented.  Consumer-

oriented conduct "need not be repetitive or recurring but defendant's acts or practices must have

a broad impact on consumers at large." *Gomez-Jimenez v. New York Law School*, 103 A.D.3d

13, 16 (N.Y. App. Div. 1st Dep't 2012).  The visiting student application process itself must be

considered consumer-oriented conduct because it was part of Defendant's efforts to sell its

services as a university to prospective students.  *See Gomez-Jimenez*, 103 A.D.3d at 17 ("[T]he

challenged practice [of concealing law school employment data] was consumer-oriented insofar

as it was part and parcel of defendant's efforts to sell its services as a law school to prospective

students.").  And Defendant's representations regarding its protection of sensitive data, and its

failure to safeguard such data constitute deceptive practices.  As Plaintiff alleges, the data breach

affected 119,000 individuals.  FAC ¶ 2.  The scope of this conduct, combined with its impact on

the security of the persons affected, is sufficient to plead consumer-oriented conduct. *Boyd v.

J.E. Robert Co.*, 2010 WL 5772892, at *19 (E.D.N.Y. Mar. 31, 2010) (finding plaintiffs had

sufficiently pled consumer-oriented element of GBL § 349 where "[t]he allegedly improper conduct in which the defendants are alleged to have engaged in has impacted a large number of individuals").

Second, Plaintiff has alleged that Defendant's conduct is materially misleading.  As an initial matter, whether a particular act or practice is deceptive is usually a factual question that is inappropriate for decision on a motion to dismiss.  *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) ("Courts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss.").

But even if the Court were to consider this question on a motion to dismiss, Plaintiff's allegations easily suffice to allege that Defendant's conduct was materially misleading. "Whether an act is materially misleading is defined objectively and looks to whether the act is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Morales v. Kavulich & Assocs, P.C.*, 294 F. Supp. 3d 193, 198 (S.D.N.Y. 2018).  Plaintiff has alleged that "Yale promised, and [she] understood, that Yale would keep her Personal Information confidential and secured.  But Yale failed to do so, and her Personal Information was accessed and extracted by unauthorized users."  FAC ¶ 23.  Such allegations are sufficient to plead a material misrepresentation regarding data security.  *See Fero I*, 236 F. Supp. 3d at 776 ("Based on Plaintiffs' allegations, it is at least plausible that the Excellus Defendants' representations in their privacy policies and on their websites concerning data security…would lead a reasonable consumer to believe that the Excellus Defendants were providing more adequate data security than they purportedly were.").

Moreover, Plaintiff alleges, *inter alia*, that Yale "[m]isrepresent[ed] that it would comply

with common law and statutory duties pertaining to the security and privacy of Plaintiff and New York Subclass' members' Personal Information."  FAC ¶ 72(c).  At least two courts have held nearly identical allegations sufficient. *Fero I*, 236 F. Supp. 3d at 770, 771 (declining to dismiss plaintiffs' GBL § 349 claim where the Complaint alleged that "Defendants negligently and recklessly misrepresented . . . that they would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiffs and Statewide Class Members Personal Information."); *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *5 (C.D. Cal. Dec. 29, 2016) (plaintiffs sufficiently alleged materially misleading conduct based on the allegation that the defendants misrepresented that they "would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of" New York class members' personal information.").

Third, as discussed above, Plaintiff plainly suffered injury as a result of Defendant's deceptive acts and practices.  *See supra,* §§ I.A, II.D (discussing the "who, what, when, where, and how"); *see also In re Experian Data Breach Litig.*, 2016 WL 7973595, at *5 ("The third element of damages is sufficiently alleged for similar reasons that the Court previously found damages to be sufficiently alleged under the negligence claim.").  Plaintiffs may satisfy GBL § 349's actual injury requirement by alleging loss of value of their personal information.  *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 995 (N.D. Cal. 2016) ("Absent any state law or Second Circuit precedent that holds to the contrary . . . the Court finds that 'Loss of Value of PII' constitutes a cognizable injury under GBL § 349.").  And "Plaintiffs may recover for lost *personal* time under the GBL."  *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 329 (S.D.N.Y. 2018) ("A plaintiff can show 'actual injury' merely by proving that he or she was 'misled or deceived by an advertisement which is misleading in a material way.'").  Plaintiff

has alleged both of these injuries.  FAC ¶¶ 23, 75; *supra,* §§ I.A.2-3.  Defendant's argument that

Plaintiff fails to allege her "injuries were caused by Yale's allegedly deceptive conduct" is

meritless. MTD at 27. *See supra,* §§ I.B, II.C, IV.C.

Moreover, New York courts have held a loss of privacy may satisfy GBL § 349's injury

requirement where the personal information disclosed includes Social Security numbers.

*Meyerson*, 7 Misc. 3d at 920 (denying motion to dismiss plaintiff's GBL § 349 claim and finding

"it cannot be doubted that a privacy invasion claim and an accompanying request for attorney's

fees may be stated under GBL § 349 based on non-pecuniary injury . . ."); *c.f. Mount v.*

*PulsePoint, Inc.*, 2016 WL 5080131, at *12 (S.D.N.Y. Aug. 17, 2016), *aff'd,* 684 F. App'x 32

(2d Cir. 2017), *as amended* (May 3, 2017) (dismissing GBL § 349 claims arising from disclosure

of anonymous Internet search histories because "this data, at least in the abstract, occupies a

lower level in the hierarchy of sensitive information as compared to SSNs, the disclosure of

which the *Meyerson* Court noted could increase the risk of identity theft.").  Here, Plaintiff has

alleged that Defendant represented that it "would keep [Plaintiff's] Personal Information

confidential and secured."  FAC ¶ 23.  Defendant also did not inform Plaintiff that it would

retain her personal information after she applied to (but did not attend) Yale.  FAC ¶ 12.

Because Defendant failed to properly secure Plaintiff and other class members' data, despite

Defendant's representations it would do so, Plaintiff and other class members' personal

information was stolen.  FAC ¶ 1, 23.  This is exactly the type of sensitive information that puts

Plaintiff and others at increased risk of identity theft and fraudulent charges sufficient to confer

standing.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

motion to dismiss in its entirety.

Dated:  February 8, 2019                          Respectfully submitted,

                                                  **BURSOR & FISHER, P.A.**

                                                  By:    */s Philip L. Fraietta*
                                                            Philip L. Fraietta

                                                  Scott A. Bursor (*Pro Hac Vice* Forthcoming)
                                                  Philip L. Fraietta (phv09753)
                                                  888 Seventh Avenue
                                                  New York, NY 10019
                                                  Telephone:  (646) 837-7150
                                                  Facsimile:  (212) 989-9163
                                                  Email:  scott@bursor.com
                                                              pfraietta@bursor.com

                                                  **REARDON SCANLON LLP**
                                                  James J. Reardon, Jr. (CT 13802)
                                                  45 South Main Street, 3rd Floor
                                                  West Hartford, CT  06107
                                                  Telephone: (860) 955-9455
                                                  Facsimile:  (860) 920-5242
                                                  Email:  james.reardon@reardonscanlon.com

                                                  *Attorneys for Plaintiff*