**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| JULIE MASON, on behalf of herself and all others similarly situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO.  3:18-cv-01280-KAD |
| YALE UNIVERSITY, | : : : | |
| Defendant. | : : | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT[1]**

---

[1] Defendant Yale University does not request oral argument and believes this motion can be decided based on the pleadings, but is willing to participate in oral argument if it would be of assistance to the Court.

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................2

I.      Plaintiff Lacks Article III Standing.......................................................................2

II.     Plaintiff Cannot Avoid the Statutes of Limitations Barring Her Negligence and Section 349 Claims. ..............................................................................................................5

        A.      *Plaintiff's Negligence Claim Is Time-Barred.* .........................................5

        B.      *Plaintiff's Section 349 Claim Is Also Timed-Barred.* ..............................8

III.    Plaintiff's Negligence Claim Fails.......................................................................9

IV.     Connecticut's Data Breach Statute Does Not Provide A Private Right of Action ...........11

V.      Plaintiff Has Abandoned Her New York Data Breach Statute Claim. ..............................13

VI.     Plaintiff Fails To State A Claim Under Section 349............................................13

CONCLUSION................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Hannaford Bros. Co.*,
   659 F.3d 151 (1st Cir. 2011) ................................................................3

*In re Anthem, Inc. Data Breach Litigation*,
   No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ...............................3

*In re Arby's Rest. Grp. Inc. Litig.*,
   No. 1:17-cv-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) .....................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................14

*Bryant v. Broad. Music Inc.*,
   721 F. App'x 78 (2d Cir. 2018) ..........................................................8, 9

*Daly v. Metro. Life Ins. Co.*,
   782 N.Y.S.2d 530 (N.Y. App. Div. 2004) ...........................................10

*Dieffenbach v. Barnes & Noble, Inc.*,
   887 F.3d 826 (7th Cir. 2018) ..............................................................4

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016).....................3

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
   No. MDL 2800, 2019 WL 937735 (N.D. Ga. Jan. 28, 2019) ...........................................12, 13

*In re Experian Data Breach Litigation*,
   No. SACV 15-1592 AG (DFMX), 2016 WL 7973595 (C.D. Cal. Dec. 29,
   2016) ..........................................................................................9, 10

*Fenn v. Yale Univ.*,
   283 F. Supp. 2d 615 (D. Conn. 2003) ...................................................6

*Fero v. Excellus Health Plan, Inc.*,
   304 F. Supp. 3d 333 (W.D.N.Y. 2018) ...............................................2, 14, 15

*Flannery v. Singer Asset Fin. Co., LLC*,
   94 A.3d 553 (Conn. 2014) ..............................................................7, 8

*Freeman v. United States*,
   166 F. Supp. 3d 215 (D. Conn. 2016) .................................................14

*Gonzales v. Nat'l Westminster Bank, Plc*,
   No. 11 Civ. 1435 (LAP), 2013 WL 6978874 (S.D.N.Y. Nov. 18, 2013) ................................8

*Gorss Motels, Inc. v. AT&T Mobility LLC*,
   299 F. Supp. 3d 389 (D. Conn. 2018) ....................................................................................3

*Graham v. Eagle Distrib. Co.*,
   637 N.Y.S.2d 583 (N.Y. App. Div. 1996) ...........................................................................15

*Haas v. Haas*,
   48 A.3d 713 (Conn. App. Ct. 2012) .......................................................................................6

*Inspired Capital, LLC v. Conde Nast*,
   No. 18 Civ. 0712 (JFK), 2018 WL 6173712 (S.D.N.Y. Nov. 26, 2018) ................................5

*Int'l Strategies Grp., Ltd. v. Ness*,
   645 F.3d 178 (2d Cir. 2011)................................................................................................5, 6

*Kaufman v. Sirius XM Radio, Inc.*,
   751 F. Supp. 2d 681 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012).........................14

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*,
   773 F.3d 243 (11th Cir. 2014) ...............................................................................................4

*Kilgore v. Ocwen Loan Servicing, LLC*,
   89 F. Supp. 3d 526 (E.D.N.Y. 2015) ....................................................................................14

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   819 F.3d 963 (7th Cir. 2016) .................................................................................................3

*McCoy v. Feinman*,
   785 N.E.2d 714 (N.Y. 2002).................................................................................................9

*Mead v. Burns*,
   509 A.2d 11 (Conn. 1986) ...................................................................................................12

*OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*,
   503 F. Supp. 2d 490 (D. Conn. 2007)....................................................................................5

*Remijas v. Neiman Marcus Group, LLC*,
   794 F.3d 688 (7th Cir. 2015) .................................................................................................3

*Ross v. Louise Wise Servs., Inc.*,
   868 N.E.2d 189 (N.Y. 2007)..................................................................................................9

*Rydingsword v. Liberty Mut. Ins. Co.*,
   615 A.2d 1032 (Conn. 1992) ...............................................................................................12

*Saint Bernard Sch. of Montville, Inc. v. Bank of Am.*,
   95 A.3d 1063 (Conn. 2014) ...................................................................................6

*Slainte Invs. Ltd. P'ship v. Jeffrey*,
   142 F. Supp. 3d 239 (D. Conn. 2015) ....................................................................5

*Soares ex rel. Estate of Soares v. George A. Tomasso Constr. Corp.*,
   784 A.2d 1041 (Conn. App. Ct. 2001)..................................................................10

*Stewart Title Guar. Co. v. ISGN Fulfillment Servs., Inc.*,
   No. 3:16-cv-01687, 2017 WL 3587176 (D. Conn. Aug. 18, 2017)........................13

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) ............................................................12, 13

*Torres v. Wendy's Int'l, LLC*,
   No. 6:16-cv-210-Orl-40DCI, 2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) ..........3

*In re Trilegiant Corp., Inc.*,
   11 F. Supp. 3d 82 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Grp.,*
   *LLC*, 889 F.3d 116 (2d Cir. 2018) .......................................................................11

*Whalen v. Michael Stores Inc.* ("*Whalen I*"),
   153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd sub nom. Whalen v. Michaels*
   *Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) ("*Whalen II*") ...............................2, 3

*Whalen v. Michaels Stores, Inc.* ("*Whalen II*"),
   689 F. App'x 89 (2d Cir. 2017) ...........................................................................2, 3

*Woods v. Maytag Co.*,
   No. 10-CV-0559(ADS), 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ..............13, 14

*Yershov v. Gannet Satellite Information Network, Inc.*,
   204 F. Supp. 3d 353 (D. Mass. 2016) ....................................................................4

**Statutes**

C.G.S.A. § 36a-701b ..............................................................................7, 11, 12, 13

C.G.S.A. § 38a-815 *et seq.* ("CUIPA") ..................................................................12

C.G.S.A. § 42-110b ("CUTPA") .............................................................................11

C.G.S.A. § 52-577...............................................................................................5, 8

N.Y. Gen. Bus. Law § 349 ............................................................................. passim

N.Y. Gen. Bus. Law § 899-aa ...........................................................................7, 13

N.Y. C.P.L.R. § 214 ................................................................................................................. 5, 9

**Other Authorities**

Compl., *In re Barnes & Noble Pin Pad Litig.*,
    No. 1:12-cv-08617 (N.D. Ill. Oct. 31, 2016), ECF 132 ............................................................ 4

Compl., *In re Experian*,
    8:15-cv-01592-AG-DFM (C.D. Cal. Apr. 15, 2016) ), ECF 151 ................................ 10, 14, 15

Compl., *Fero*,
    6:15-cv-06569-EAW-JJM (W.D.N.Y. Mar. 22, 2018), ECF 193 ........................................... 14

## INTRODUCTION

Allowing Plaintiff's complaint to survive Yale's motion to dismiss would result in the opening of floodgates to costly class action litigation any time an organization conducts a security review, discovers a data breach from many years in the past, and a plaintiff claims damage without showing any causal connection between the breach and the claimed damage.

In this case, Plaintiff filed a putative nationwide class action complaint just two days after receiving a letter from Yale stating that her personally identifiable information ("PII") had been acquired from a Yale database approximately 10 years earlier.  Am. Compl. ¶ 23.  Plaintiff alleges she gave that PII to Yale in 1996 when she applied to a visiting student program, *id*., and she seeks to hold Yale liable for credit card and bank fraud she allegedly suffered many years later.  In her response brief, Plaintiff cites nearly one hundred different cases in an effort to invoke this Court's jurisdiction, but none of this case law excuses Plaintiff's failure to allege an injury-in-fact sufficient to give rise to standing under Article III.  Plaintiff concedes that she does not allege she was held liable for any fraudulent charges or withdrawals as a result of the fraud alleged in her complaint, presumably because she was reimbursed by her bank or card company many years ago.  In fact, the sole out-of-pocket cost Plaintiff claims is the cost of certified mail she says she incurred to send credit freeze requests to three credit reporting agencies many years before anyone knew about the Yale data beach.  Beyond that, she claims only an "increased risk of harm," the lost "time value" of money that was presumably reimbursed, time she says she spent mitigating fraud, and the "loss of value" of her PII.  None of these purported harms is legally sufficient to confer Article III standing, nor has Plaintiff alleged facts to plausibly show that such harms were *caused by Yale* and not some other data incident or fraudulent activity.

Further, even if Plaintiff had standing, all of Plaintiff's claims are indisputably barred by the applicable three-year statutes of limitations.  These threshold issues are dispositive and

compel dismissal of Plaintiff's case before the Court even considers the numerous other flaws plaguing her complaint. In sum, all of Plaintiff's claims are defective as a matter of law and her complaint, which has already been amended once, should be dismissed with prejudice.

## ARGUMENT

### I.     Plaintiff Lacks Article III Standing.

Citing a mish-mash of case law from other jurisdictions, Plaintiff insists that she has sufficiently alleged concrete injuries in her amended complaint. A brief review of the alleged "concrete injuries" she focuses on in her response demonstrates that this is not the case.

First, Plaintiff has not alleged she was held liable for any of the credit card and bank account fraud she allegedly incurred. In *Whalen v. Michael Stores Inc.* ("*Whalen I*"), the Eastern District of New York found that a plaintiff lacked standing in a data breach case where there were "no allegations that [she] was required to pay the [fraudulent] charges," a holding the Second Circuit affirmed. 153 F. Supp. 3d 577, 580–81 (E.D.N.Y. 2015), *aff'd sub nom. Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) ("*Whalen II*"). Plaintiff cites cases from other circuits asking this Court to accept the theory that reimbursed fraud charges can confer standing, but *Whalen II* is controlling in the Second Circuit.[2]

Second, Plaintiff is incorrect that she "has in fact pled specifics about the time and effort she spent addressing the aftermath of the data breach" sufficient to establish standing. Resp. at 13. In *Whalen II*, the Second Circuit found similar allegations insufficient where—like here— the plaintiff did not allege she was held liable for any fraudulent charges. 689 F. App'x at 90-91.

---

[2] Plaintiff's suggestion that *Whalen II* means something other than what it says because of the Western District of New York's holding in *Fero v. Excellus Health Plan, Inc.*, 304 F. Supp. 3d 333 (W.D.N.Y. 2018) ("*Fero II*") fails for two reasons. First, *Fero II* was decided on a motion for reconsideration where the court considered a forensic expert report finding that the plaintiffs' PII had been put up for sale on the Dark Web for criminal purposes. 304 F. Supp. 3d at 341-42. Second, *Fero II* merely speculates about how the Second Circuit might rule on certain issues based on dicta in *Whalen II*. *Id.*

None of the cases Plaintiff cites compels a different result.  The holdings in *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) and *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) represent Seventh Circuit law that is at odds with *Whalen II*. Further, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.* involved "loss of productivity" allegations, which Plaintiff does not allege here. No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at \*6 (S.D. Cal. Nov. 3, 2016).  And the language Plaintiff cites from *In re Anthem, Inc. Data Breach Litigation* is not instructive because it concerned whether time spent monitoring one's PII is recoverable under New Jersey law for breach of contract.  No. 15-MD-02617-LHK, 2016 WL 3029783, at \*26 (N.D. Cal. May 27, 2016).  Finally, *Gorss Motels, Inc. v. AT&T Mobility LLC* involved a TCPA violation where the court expressly held the plaintiff "need only allege th[at a] procedural right was violated and not any '*additional* harm' in order to 'demonstrate[ ] a sufficient 'risk of real harm.'"  299 F. Supp. 3d 389, 395 (D. Conn. 2018) (citation omitted) (first alteration added).  Plaintiff cites no cases holding that mere allegations of "lost time" mitigating a data breach establish a cognizable injury under Connecticut law, especially where the lost time is not tied to lost income or earnings.

Third, the Court should reject Plaintiff's argument that her allegation that she "pa[id] money for certified mail to send credit freeze requests to all three major credit reporting agencies" (Am. Compl. ¶ 23) should alone confer standing.  None of the cases Plaintiff cites holds that certified mail costs are enough to establish an injury-in-fact.  Plaintiff cites *Torres v. Wendy's Int'l, LLC*, but the $3 late fee on the plaintiff's account there is plainly not a *mitigation* cost.  No. 6:16-cv-210-Orl-40DCI, 2017 WL 8780453, at \*2 (M.D. Fla. Mar. 21, 2017).  And *Anderson v. Hannaford Bros. Co.* involved identity theft insurance costs and replacement card fees, which Plaintiff does not allege here.  659 F.3d 151, 165 (1st Cir. 2011); *see also Remijas*,

794 F.3d at 694 (finding "credit-monitoring services come at a price that is more than *de minimis*"—$19.95 per month—which "qualifies as a concrete injury").

Fourth, Plaintiff's allegation in her Section 349 count that she suffered "loss of value of [her] Personal Information" (Am. Compl. ¶ 75) cannot confer standing because Plaintiff "has failed to allege *how* her . . . PII became less valuable." *Whalen I*, 153 F. Supp. 3d at 581-82 (emphasis added). Plaintiff's reliance on *Yershov v. Gannet Satellite Information Network, Inc.*, 204 F. Supp. 3d 353 (D. Mass. 2016) is misplaced because it concerned privacy rights under the Video Privacy Protection Act, not the diminution-in-value theory Plaintiff advances here.

Finally, Plaintiff's suggestion that she has standing because she lost the "time value" of money also fails. Plaintiff cites no Second Circuit case accepting the alleged lost time value of money as an injury-in-fact in the data breach context, but even assuming it could be a cognizable injury, Plaintiff fails to sufficiently plead that injury. All Plaintiff alleges is that she had approximately $60,000 stolen from one of her bank accounts and "lost the time value of those monies." Am. Compl. ¶ 23. Plaintiff does not say for how long she purportedly lost the use of these funds, if at all. A "bare allegation that [a plaintiff] has lost [the time value of money] . . . sets out an injury that is too abstract and indefinite to confer Article III standing." *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014). In the only data breach case Plaintiff cites on this point, *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018), the plaintiff specifically alleged that the "bank put her account on hold due to suspected fraud" and that "[s]he was without access to some of her funds for three days [and] could not purchase anything for a few days." Compl. ¶ 125, *In re Barnes & Noble Pin Pad Litig.*, No. 1:12-cv-08617 (N.D. Ill. Oct. 31, 2016), ECF 132. Plaintiff here has offered nothing

more than bare allegations insufficient to establish standing.  Because Plaintiff has not alleged an injury-in-fact, the Court should dismiss her claims for lack of subject matter jurisdiction.[3]

## II.  Plaintiff Cannot Avoid the Statutes of Limitations Barring Her Negligence and Section 349 Claims.

As explained in Yale's opening brief, Plaintiff's negligence claim is barred by Connecticut's three-year statute of limitations for tort actions under C.G.S.A. § 52-577, and her Section 349 claim under New York's unfair trade practices act is barred by the three-year statute of limitations under N.Y. C.P.L.R. § 214.  Both of these claims, which hinge on conduct Plaintiff alleges occurred in 1996 (her Section 349 claim) and—at the very latest—in 2011 (her negligence claim), are indisputably outside of the applicable three-year limitations periods. Plaintiff's bid to resurrect her claims under the "continuing course of conduct" doctrine falls flat because she not alleged any facts to plausibly show that rare exception applies.[4]

### A.  *Plaintiff's Negligence Claim Is Time-Barred.*

To establish a continuing course of conduct in Connecticut, "'there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto.'"  *Int'l Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 183–84 (2d Cir. 2011) (citation omitted).  To show a "'duty that remained in existence,'" Plaintiff must establish (i) "'a special

---

[3] Plaintiff also lacks standing because she has not plausibly alleged that her purported injuries were caused *by Yale*.  *See* Mot. at 10-12.  Plaintiff concedes her injuries were incurred as a result of fraud in 2009 and 2014, *not* in response to learning of the Yale data breach.  Only now does she try to tie these purported harms to Yale with her conclusory statement that "the extracted PII [from the Yale breach] . . . allowed the thieves access to her bank accounts."  Am. Compl. ¶ 23.

[4] Plaintiff incorrectly suggests the tolling doctrine she invokes "'cannot be decided on a motion to dismiss.'"  Resp. at 22, 35.  Courts routinely grant motions to dismiss where plaintiffs invoke this doctrine.  *See, e.g.*, *Inspired Capital, LLC v. Conde Nast*, No. 18 civ. 0712 (JFK), 2018 WL 6173712, at *7 (S.D.N.Y. Nov. 26, 2018) (deciding on motion to dismiss that New York's continuous wrong doctrine did not apply); *Slainte Invs. Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 259 (D. Conn. 2015) (deciding on motion to dismiss that Connecticut's continuing course of conduct doctrine did not apply); *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 511 (D. Conn. 2007) (same).

relationship between the parties giving rise to such a continuing duty,'" or (ii) "'some later wrongful conduct of a defendant related to the prior act.'"  *Id*. (citation omitted).  Plaintiff has not alleged facts establishing either prong is met.

First, Plaintiff has not alleged facts (nor could she) to show that she and Yale had a special, or fiduciary, relationship sufficient to impose a continuing duty.  "Under Connecticut law, '[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other.'"  *Fenn v. Yale Univ.*, 283 F. Supp. 2d 615, 631 (D. Conn. 2003) (alteration in original) (citation omitted).  For example, Plaintiff cites cases where a fiduciary duty was recognized with an accountant for an elderly woman, *see Haas v. Haas*, 48 A.3d 713, 720 (Conn. App. Ct. 2012), and between a tenured professor and a university, *see Fenn*, 283 F. Supp. 2d at 631.  *See also Saint Bernard Sch. of Montville, Inc. v. Bank of Am.*, 95 A.3d 1063, 1077 (Conn. 2014) (noting fiduciaries typically include "'agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians'") (citation omitted).  Plaintiff, however, has not plausibly alleged a fiduciary relationship with Yale.  She instead specifically alleges that she "is not and never was an alumnus, faculty member, or staff member of Yale," and that her *only* contact with Yale was "as an applicant to a visiting student program in or around 1996."  Am. Compl. ¶ 23.  Accordingly, she fails to allege a fiduciary or special relationship capable of giving rise to a continuing duty.

Second, Plaintiff has not alleged any "later wrongful conduct" to toll the limitations period.  Even if Plaintiff could show that Yale failed to adequately safeguard her PII, that purported misconduct ended in 2011 when—as Plaintiff concedes—Yale deleted her PII.  Am. Compl. ¶ 13; *see also* Ex. A to Yale's Motion to Dismiss ("Mot.").  Plaintiff must therefore

6

allege some wrongful conduct *after* 2011.  Plaintiff argues that Yale's purported "failure to timely . . . provide notice of the data breach" (Resp. at 22) was a later wrongful act sufficient to toll the limitations period.  But even assuming an alleged violation of Connecticut or New York's data breach statute could be a basis for tolling despite having no private right of action, *see infra* at 11-13, any such violation could not have occurred before June 2018, when Yale first discovered the breach.  Am. Compl. ¶ 1.  Indeed, the duty to notify under both statutes runs from the date a breached entity *discovers* a breach.  *See* C.G.S.A. § 36a-701b(b)(1) (breached entity "shall provide notice of any breach of security following the discovery of the breach"); N.Y. Gen. Bus. Law § 899-aa(1)(d)(2) (breached entity "shall disclose any breach of the security of the system following discovery").  Connecticut law is clear that a later wrongful act cannot toll the limitations period for prior actionable conduct that is otherwise time-barred "when the instances of wrongdoing comprising the course of conduct are separated by a gap that exceeds the length of the applicable statute of limitations"—here, three years.  *Flannery v. Singer Asset Fin. Co.*, LLC, 94 A.3d 553, 571 (Conn. 2014).  "In such cases, although the course of conduct postdating such a gap may remain actionable . . . recovery is barred for the instances of misconduct predating the gap."  *Id*.  Thus, any purported failure to notify occurred no earlier than June 2018, at least six and half years after the last date that Yale stored and allegedly failed to safeguard Plaintiff's PII.

Finally, Plaintiff's suggestion that her claim was tolled because Yale "fail[ed] to timely identify . . . the data breach" (Resp. at 22) also fails.  No court has sustained a negligence claim under Connecticut law based solely on allegations that a breached entity failed to *discover* a cybercrime carried out against it.  Nor would permitting Plaintiff to save her time-barred claim with conclusory allegations about Yale's failure to discover the breach comport with Connecticut

law, which rejects a mere "ongoing failure to confess [an] earlier tortious act" as a basis for tolling. *Flannery*, 94 A.3d at 575. To the contrary, courts have found that allowing such a theory would "render the three year statutes of limitations meaningless." *Id.* For these reasons, Plaintiff's negligence claim should be dismissed as time-barred by C.G.S.A. § 52-577.

B.     *Plaintiff's Section 349 Claim Is Also Timed-Barred.*

Plaintiff's Section 349 claim hinges on her conclusory allegation that Yale made "misrepresentations and omissions regarding its ability to protect her PII." Resp. at 35. Even assuming Plaintiff could establish any such conduct, it inarguably occurred in 1996 when Plaintiff applied to the visiting student program. Am. Compl. ¶ 23. Plaintiff's position that her Section 349 claim was tolled for 22 years until Yale notified her of the breach under New York's "continuing wrong doctrine" lacks merit.

The continuing wrong doctrine "'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct. The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs.'" *Bryant v. Broad. Music Inc.*, 721 F. App'x 78, 80 (2d Cir. 2018) (citation omitted). Here, the contents of Yale's alleged "deceptive and unlawful" misrepresentations to Plaintiff regarding its safeguarding of her PII in 1996 are not alleged. Plaintiff also alleges no subsequent interactions with Yale, and she does not allege that Yale made any further misrepresentations to her after 1996. Instead, she asserts that Yale's ongoing failure to correct its earlier misrepresentation is a separate wrong sufficient to toll the limitations period. But New York law does not permit allegations of "a continuous *omission*" to support application of the continuing wrong doctrine. *See Gonzales v. Nat'l Westminster Bank, Plc*, No. 11 civ. 1435 (LAP), 2013 WL 6978874, at *4 (S.D.N.Y. Nov. 18, 2013) (emphasis added) (rejecting continuing wrong doctrine argument where "Plaintiffs' allegation merely reflect[ed] Defendant's ongoing failure to fix a past wrong

(not correcting the statements in [the past]) as opposed to Defendant's committing any new misdeeds"); *Bryant*, 721 F. App'x at 80 (doctrine not applicable to Section 349 claim because "'cause of action accrues . . . at the time that the wrongful act *first injured plaintiff* and it does not change as a result of continuing consequential damages'") (alteration and emphasis added) (citation omitted).   And for these same reasons, Plaintiff's Section 349 claim is not subject to equitable tolling: "The uncommon remedy of equitable estoppel 'is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.'"  *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007); *see also McCoy v. Feinman*, 785 N.E.2d 714, 722 (N.Y. 2002) ("[New York] law cannot permit a limitations period to depend on a continuing omission that can go on for decades.").

Because Plaintiff has not alleged facts showing Yale made any purported misrepresentations to or otherwise deceived Plaintiff after 1996, her Section 349 claim is barred by the three-year limitations period under N.Y. C.P.L.R. § 214.

## III.   Plaintiff's Negligence Claim Fails.

Even if Plaintiff could establish standing *and* that her claims are not time-barred, Plaintiff's negligence claim would still fail.  As explained in Yale's opening brief, Plaintiff has not alleged facts under which Connecticut law would impose liability on Yale for the types of harms Plaintiff claims she suffered.  *See* Mot. at 13-19.

In her response, Plaintiff cites cases finding a legally recognized duty under laws of other states, but she cites no authority showing that Connecticut law would hold Yale liable in the circumstances here.[5]  Plaintiff cites *In re Experian Data Breach Litigation* for the proposition

---

[5] Plaintiff's reliance on C.G.S.A. § 42-471 is misplaced because that statute did not become effective until October 1, 2008, almost 12 years after Plaintiff provided her PII to Yale and after the breach began.  Further, Plaintiff cites no case in which that statute—which lacks a private right of action—was held to provide the basis for a negligence claim.

that she must simply "*allege* a duty, not *establish* its existence," but the court in that case also said a plaintiff must adequately allege the "*source of those duties*."   No. SACV 15-1592 AG (DFMX), 2016 WL 7973595, at *3 (C.D. Cal. Dec. 29, 2016) (third emphasis added).   Unlike here, the plaintiffs in *In re Experian* specifically alleged that Experian had a formal privacy policy directed to consumers that "acknowledged Experian's duty to adequately protect [the] Class members' PII."   Compl. ¶ 145, *In re Experian*, 8:15-cv-01592-AG-DFM (C.D. Cal. Apr. 15, 2016), ECF 151.   Courts in other cases cited by Plaintiff also relied on express privacy policies as a source of the duty to safeguard the PII in question.   *See, e.g., Daly v. Metro. Life Ins. Co.*, 782 N.Y.S.2d 530, 535-36 (N.Y. App. Div. 2004) (finding duty under New York law where "Met Life . . . recognized [its] obligation, and issued a privacy notice to their customers stating that they took great care in safeguarding their customers' personal information.").   In contrast, Plaintiff here does not point to any relevant representation made by Yale regarding data security, other than a vague "promise" Yale allegedly made to her to safeguard her PII.[6]

Additionally, Plaintiff's "'simple conclusion that the harm to [her] was foreseeable . . . cannot by itself mandate a determination that a legal duty exists.'"   *Soares ex rel. Estate of Soares v. George A. Tomasso Constr. Corp.*, 784 A.2d 1041, 1044 (Conn. App. Ct. 2001) (alterations added) (citation omitted).   Plaintiff suggests that "Yale knew, or should have known, that storing 'unneeded personal information' on its servers put that information at risk of being accessed in a data breach."   Am. Compl. ¶ 15.   But the only support Plaintiff cites is a

---

[6] As explained in Yale's opening brief, even if Connecticut law would recognize the internal school document on Yale's website that Plaintiff cites as a source of a legal duty (*see* Am. Compl. ¶ 43), it only became effective on October 1, 2008, years after Plaintiff provided her PII to Yale and after the breach began.   Likewise, the document Plaintiff cites for her conclusory allegation that Yale is "obligated by statute, regulation, and contract" to safeguard data (*id.* ¶ 8) became effective in 2018.

Washington Post article that has nothing to do with Yale, which was published in January 2009, *after* the breach at issue began.  *Id*.  Thus, unlike the cases Plaintiff relies on, Plaintiff has not plausibly alleged that it was foreseeable Yale's cybersecurity practices in 2008 (or in 1996) would result in the harms of which Plaintiff now complains.  *Accord In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-cv-0514-AT, 2018 WL 2128441, at *5 (N.D. Ga. Mar. 5, 2018) (alleging breach was foreseeable because, *inter alia*, Arby's "was aware that Wendy's, its parent company and former corporate affiliate, suffered a significant breach of its point of sale system, a similar system [as that] used by Arby's") (footnote omitted).

Finally, even if Plaintiff had alleged facts showing the breach was foreseeable, the Court should not impose liability on Yale under these circumstances.  Unlike other data breach cases currently pending across the country, the instant case involves a breach that occurred *a decade ago*.  Any present-day legal duty to safeguard PII that may exist should not be retroactively applied to Yale's conduct in 2008, or to vague promises that Yale allegedly made in 1996.

## IV. Connecticut's Data Breach Statute Does Not Provide A Private Right of Action.

Plaintiff incorrectly suggests she can maintain a claim under Connecticut's data breach statute through Connecticut's unfair and deceptive trade practices act, C.G.S.A. § 42-110b ("CUTPA"), even though the text of C.G.S.A. § 36a-701b(g) expressly forecloses that option: "Failure to comply with the requirements of this section shall constitute an unfair trade practice for purposes of [CUTPA] *and shall be enforced by the Attorney General*." (Emphasis added.)[7]

---

[7] Plaintiff cannot bring a class claim under CUTPA.  Plaintiff cites a single out-of-circuit case that—in a footnote—appears to question whether Rule 23 would override the class action restriction in C.G.S.A. § 42-110g(b).  But the "the class action restriction in CUTPA reflects a substantive policy judgment by the Connecticut legislature" and "[b]ecause the restriction is substantive rather than procedural, Rule 23 cannot supersede it."  *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 119 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018).  Plaintiff is not a resident of Connecticut and she does not allege she was injured in Connecticut, therefore she cannot assert a class claim under CUTPA.  *Id*.

Two federal courts have examined Connecticut's data breach statute and both have reached the same conclusion: it confers no private right of action and a private plaintiff's claim under the statute must be dismissed.  *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1168 (D. Minn. 2014) (dismissing claim brought by private litigants because statute "clearly limits enforcement power to the state's attorney general"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. MDL 2800, 2019 WL 937735, at *23 (N.D. Ga. Jan. 28, 2019) (rejecting effort to assert data breach claim under CUTPA and holding that the statute "explicitly limits enforcement to the Attorney General").

Plaintiff's attempt to avoid this conclusion through a comparison with an unrelated insurance statute also fails.  While Plaintiff is correct that private claims may be brought under CUTPA for violations of Connecticut's Unfair Insurance Practices Act ("CUIPA"), C.G.S.A. § 38a-815 *et seq*., the key statutory language in CUIPA is dissimilar to the language in Connecticut's data breach statute.  The cases Plaintiff relies on confirm that CUTPA may be used to bring private claims for violations of CUIPA because CUIPA contains express language preserving claims for liability "'*under any other laws* of [Connecticut].'"  *Mead v. Burns*, 509 A.2d 11, 17 (Conn. 1986) (emphasis in original) (citation omitted).  That language is absent from Connecticut's data breach statute.  Additionally, CUIPA does not contain a provision like the data breach statute vesting exclusive enforcement powers with the Attorney General.

Further, accepting Plaintiff's reading of the data breach statute would render the language about the Attorney General's enforcement powers meaningless.  Under C.G.S.A. § 36a-701b(g), the Attorney General is vested with authority to prosecute CUTPA claims; thus, the legislature had no reason to specify that the data breach statute "*shall be enforced by the Attorney General*" if that phrase—as Plaintiff contends—means only that the Attorney General *may* prosecute such

claims, in addition to private litigants.  *See Rydingsword v. Liberty Mut. Ins. Co.*, 615 A.2d 1032, 1036 (Conn. 1992) ("No word or phrase in a statute is to be rendered mere surplusage."). Rather, as the courts in *Target* and *In re Equifax* have confirmed, that provision was included to vest the Attorney General with exclusive authority to prosecute violations of the state's data breach statute.  This Court, too, should dismiss Plaintiff's C.G.S.A. § 36a-701b claim.[8]

## V.    Plaintiff Has Abandoned Her New York Data Breach Statute Claim.

Plaintiff does not dispute that her claim under New York's data breach statute, N.Y. Gen. Bus. Law § 899-aa, fails for lack of a private right of action.  *See* Mot. at 20-21.  Count III must therefore be dismissed.  *See Stewart Title Guar. Co. v. ISGN Fulfillment Servs., Inc.*, No. 3:16-cv-01687, 2017 WL 3587176, at *5 (D. Conn. Aug. 18, 2017) ("'When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned.'") (citation omitted).

## VI.    Plaintiff Fails To State A Claim Under Section 349.

Even if Plaintiff's Section 349 claim was not time-barred (*see supra* 8-9), it still fails to state a claim.  Plaintiff spends several pages ticking through the basic elements of a Section 349 claim, but she never identifies the allegedly deceptive conduct on which she purports to base her claim.  Plaintiff says only that "Yale promised, and [she] understood, that Yale would keep her Personal Information confidential and secured."  Am. Compl. ¶ 23.  "Courts routinely dismiss claims under GBL § 349 where the allegations are insufficiently specific to establish a deceptive practice."  *Woods v. Maytag Co.*, No. 10-CV-0559(ADS), 2010 WL 4314313, at *16 (E.D.N.Y.

---

[8] Yale also indisputably complied with the statute.  *See* Mot. at 20.  Plaintiff's confusion over the difference between subsections (b)(1) and (c) exhibits a fundamental misunderstanding of how U.S. data breach notification laws are structured.  Subsection (c) applies only to *data maintainers* that maintain data for others (e.g., cloud storage provider), who are required to give immediate notice to a data owner, who in turn must notify affected individuals.  Yale, as a *data owner*, complied with the applicable subsection (b)(1) of the statute by notifying Plaintiff within 90 days of discovering the breach.

Nov. 2, 2010).  After filing two complaints, Plaintiff has yet to allege the basic "who, what, where, when, and why" of the "promise" that Yale purportedly made to her about its data privacy practices in 1996.  Plaintiff's conclusory reference to this "promise" is a mere "'naked assertion[]' devoid of 'further factual enhancement,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and it cannot support a Section 349 claim.  *See Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 536 (E.D.N.Y. 2015) (dismissing Section 349 claim where "complaint [wa]s bereft of any detail about *what the marketing materials were, what they said, how they were distributed, and so forth*") (emphasis added); *Woods*, 2010 WL 4314313, at *16 ("general references to advertisements and statements will not be sufficient to allege a deceptive act or practice").[9]

Even if Plaintiff's claim could proceed based on vague references to an unspecified "promise," she still fails to plead essential elements of a Section 349 claim for the reasons explained in Yale's opening brief.  *See* Mot. at 24-27.  Indeed, Plaintiff's inability to offer *any* details about the alleged "promise" Yale made to her preclude her from meeting the requirements of showing Yale engaged in "materially misleading" conduct that was "consumer oriented." Plaintiff's reliance on *Fero I* and *In re Experian* on this point is misplaced.  In *Fero I*, the plaintiffs based their claim on specific representations about the defendants' privacy practices and alleged the defendants had "provide[d] each of its customers with a notice of privacy practices and other privacy statements."  *See* Compl., ¶ 59, *Fero,* 6:15-cv-06569-EAW-JJM

---

[9] Plaintiff fails to identify any specifics about Yale's purported "promise," and thus she also has "not alleged sufficient facts from which [the Court] could reasonably deduce that [she] . . . was deceived *in New York*."  *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012) (emphasis added).  Plaintiff repeats her allegations that she filled out her application, mailed it, and paid money in New York, but her vague statement that she "was promised in New York that her data would be safeguarded" (Resp. at 36)—with nothing more—is merely "'a legal conclusion couched as a factual allegation.'" *Freeman v. United States*, 166 F. Supp. 3d 215, 218 (D. Conn. 2016) (citation omitted).

(W.D.N.Y. Mar. 22, 2018), ECF 193.   The plaintiffs in *In re Experian* pointed to specific representations Experian had made to them regarding privacy practices.   *See* Compl. ¶¶ 75-80, *In re Experian,* 8:15-cv-01592-AG-DFM (C.D. Cal. Apr. 15, 2016), ECF 151.   In contrast, Plaintiff states only that "Yale promised, and [Plaintiff] understood, that Yale would keep her Personal Information confidential and secure."   Am. Comp. ¶ 23.   Far from being a "nearly identical allegation" to those in *Fero I* and *In re Experian*, Plaintiff's conclusory statement does not adequately plead a materially misleading statement to support a Section 349 claim.   Likewise, Plaintiff states that "Yale's deceptive and unlawful acts and practices complained of [in her Amended Complaint] affected the public interest and consumers at large" (Am. Compl. ¶ 76), but she pleads no facts in support.   Because she fails to allege *any* details about how Yale's "promise" was conveyed to her, she plainly has not "'demonstrate[d] that the acts or practices have a broader impact on consumers at large.'"   *Graham v. Eagle Distrib. Co.*, 637 N.Y.S.2d 583, 583-84 (N.Y. App. Div. 1996) (finding that a Section 349 claim "manifestly lacks merit" where "it does not state the nature of the material misrepresentations made to the public at large").   For example, if the purported "promise" was made to Plaintiff on a private phone call with a Yale representative, it would not have had a broad impact on consumers at large.

Finally, Plaintiff has not alleged any injury that was caused by Yale's purportedly deceptive conduct.   Even if Plaintiff could establish that Yale's alleged "promise" to her is an actionable misstatement under Section 349, she concedes that all of the harms she complains of arose from the unauthorized disclosure of her PII, *not* Yale's purported misrepresentation. Plaintiff's Section 349 claim should be dismissed for this independent reason.

## CONCLUSION

For all these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice.

This 1st day of March, 2019.

Respectfully submitted,

DEFENDANT YALE UNIVERSITY

By: */s/ Phyllis B. Sumner*
    Phyllis B. Sumner (phv09768)
    Meghan H. Magruder (phv09767)
    Shelby S. Guilbert (phv09762)
    KING & SPALDING LLP
    1180 Peachtree Street, N.E.
    Atlanta, GA 30309
    Phone: (404) 572-4600
    Fax: (404) 572-5100
    Email: psumner@kslaw.com
    Email: mmagruder@kslaw.com
    Email: sguilbert@kslaw.com


    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0164
    Fax: (860) 880-2625
    Email: jmueller@daypitney.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JULIE MASON, on behalf of herself and all others similarly situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO.  3:18-cv-01280-KAD |
| YALE UNIVERSITY, | : : | |
| Defendant. | : : | |
| _____ | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2019, I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of

record.

By: *_/s/ Phyllis B. Sumner_____*
     Phyllis B. Sumner (phv09768)
     KING & SPALDING LLP
     1180 Peachtree Street, N.E.
     Atlanta, GA 30309
     Phone: (404) 572-4600
     Fax: (404) 572-5100
     Email: psumner@kslaw.com

*Attorneys for Defendant Yale University*